Thomson, P. J.
In prescribing the manner in which elections shall be conducted, it is provided by the general election law of the state that as soon as all the votes shall have been read over and counted, the judges of -election shall make a certificate under their hands, and attested by the clerks, stating the number of votes each candidate received, designating the office for which he was a candidate, and cause the certificate to be delivered to the. clerk of the county in which the election was held; and that on the 10th day after the close of the election, or sooner, if all the returns be received, the county clerk, taking to his assistance two justices of the-peace of his county, *18 one of whom belongs to a political party different from his own, shall proceed to open the returns, canvass them, and make out and deliver a certificate of election to each of the persons having the highest number of votes for the county and precinct officers respectively. The law further provides that special elections shall be conducted, and the results thereof canvassed and certified, in all respects as near as practicable in like manner as general elections.— Mills’ Ann. Stats., secs. 1588,1624,1626.
Article IV of .the charter of the city of Denver provides for the election of officers for that city, naming the offices to be filled, and fixing the time of the election. It further provides that the city council shall meet in joint convention on the first Thursday succeeding every such election, and canvass the returns of the votes cast in the various wards and precincts of the city at such election, in such manner as may be prescribed by ordinance; and upon the completion of the canvass, declare the result, whereupon a certificate of election, signed by the mayor and attested by the city clerk, shall immediately issue to the persons elected. — Session Laws 1893, p. 190.
' An amendment to the constitution was proposed by the general assembly on the 18th day of March, 1901, which was duly ratified and approved by the qualified electors of the state at the general election in November, 1901. By section 1 of that amendment the municipal corporation, known as the city of Denver, and all municipal corporations and that part of the quasi municipal corporation known as the county of Arapahoe, included within the exterior boundaries of the city of Denver as the same should exist at the taking effect of the amendment, were consolidated and declared to be a single body politic and corporate by the name of the city and county of Denver. By the terms of section 2, the officers of *19 the city and county of Denver were to be such as by appointment or election should he provided for by charter; hut every charter must designate the officers who should, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable. Section 3 provided that immediately upon the canvass of the vote showing the adoption of the amendment, it should he the duty of the governor to issue his proclamation accordingly, and, thereupon, the city of Denver and all municipal corporations and that part of the county of Arapahoe included within the boundaries of the city, should merge into the city and county of Denver, and the terms of office of all officers of the city of Denver, the included municipalities, and the county of Arapahoe should terminate, except that .the then mayor, auditor, engineer, council (which should perform the duties of' a hoard of county commissioners), police magistrate, chief of police and hoards of the city of Denver, should he, respectively, the same officers of the city and county of Denver; that the engineer should he ex-officio surveyor, and the chief of police ex-officio sheriff, of the city and county of Denver; that the then clerk and ex-officio recorder, the treasurer, the assessor and coroner, of the county of Arapahoe, and the justices of the peace and constables holding office within the city of Denver, should he, respectively, the same officers of the city and county of Denver; that the district attorney should he ex-officio the attorney of the city and county of Denver; and that the several officers should hold their offices as specified only until their successors should he duly elected and qualified as in the amendment provided, except that the then district judges, county judge, and district attorney should, respectively, serve the full terms for which they were elected. So much of section 4 as is neces *20 sary to a consideration of the questions presented by this record, reads as follows:
£ £ The charter and ordinances of the city of Denver as the same shall exist when this amendment takes effect, shall, for the time being only, and as far as applicable, be the charter and ordinances of the city and county of Denver; but the people of the city and county of Denver are hereby vested with, and they shall always have, the exclusive power in. the making, altering, revising or amending their charter, and, within ten days after the proclamation of the governor announcing the adoption of this amendment the council of the city and county of Denver shall, .by ordinance, call a special election, to be conducted as provided by law, of the qualified electors in said city and county of Denver, for the election of twenty-one taxpayers who shall have been qualified electors within the limits thereof for at least five years, who shall constitute a charter convention to frame a charter for. said city and county in harmony with this amendment. Immediately upon completion, the charter so framed, with a- prefatory synopsis, shall be signed by the officers and members of the convention and delivered to the clerk of said city and county, who shall publish the same in full, with his official certification, in the official newspaper of said city and county, three times, and a week apart, the first publication being with the call for a special election, at which the qualified electors of said city and county shall by vote express their approval or rejection of the-said charter. If the said charter shall be approved by a majority of those voting thereon, then two copies thereof (together with the vote for and against) duly certified by the said clerk, shall, within ten days after such vote is taken, be filed with the secretary of state, and shall thereupon become and be the charter of the city and county of *21 Denver * * . * and shall become the organic law thereof, and supersede any existing charters and amendments thereof. ’ ’ Section 5 provides for future amendments of the charter, or the adoption of a new charter by the citizens of the city and county of Denver.- — Session Laws 1901, p. 97, et seq.
Pursuant to the requirement of section 4, proclamation.of the adoption of the amendment by the governor having been duly made, the council of the city and county of Denver called an election for members of the charter convention, to be held on the 2nd day of June, 1903, which election was accordingly so held, and the returns of the election delivered to Julius Aichele, former clerk of Arapahoe county and, at the time of receiving the returns, clerk of the city and county of Denver, by virtue of the amendment. The council of the city and county of Denver insisted that a canvass of the returns could not lawfully be made except by it; and Julius Aichele, the city and county clerk, asserted authority in himself to make the canvass with two- assistant justices whom he had chosen for the purpose. At the suit of Thomas McMurray et ah, a temporary injunction was allowed against the mayor and the members of the council, restraining them from interfering with the returns until the further order of the court; and, at the suit of Fred J. Chamberlain, the clerk and his two justices were similarly enjoined. The two cases were finally heard together, with the result that the injunction against the mayor and council was dissolved, and that against the clerk and justices made perpetual. These judgments have been brought here for review by appeal.
The moment the constitutional amendment took effect, the municipal corporation, known as the city of Denver, and the quasi corporation, known as the county of Arapahoe, ceased to exist; and a new body politic and corporate was created, called the city and *22 county of Denver. At the same time the terms of all officers. of the city of Denver, the included corporations, and the county of Arapahoe, except the district judges, the county judge and district attorney, expired; but for the purpose of furnishing the new corporation with a government until, under the charter to be framed, an election for the proper officers could be had, the mayor, council, boards, and, certain other officers of the city of Denver, and certain of the officers of Arapahoe county, were constituted by the amendment officers of the city and' county of Denver. The mayor, and the persons composing the council, of the city of Denver, became, by virtue of the amendment, the mayor and-council of the city and county of Denver. The mayor and members of the council, as well as all other officers of the new corporation, derive their title to office solely from the amendment ; they have therefore such powers as it expressly confers, or are legitimately deducible from it and consistent with it, and no other. A power expressly conferred on the council is the power to enact an ordinance calling an election for members of the charter convention. The council is also clothed with all the powers of a board of county commissioners. What those powers are is to be found in the statutes of the state pertaining to county government. The old charter of the city of Denver, in so far as it is the charter of the city and county of Denver, is likewise to be considered in determining the extent of the council’s authority. But that charter is not the charter of the city and county except qualifiedly. It is such charter only in so far as it is applicable to the constitution of the new corporation; however, subject to this' qualification, the council of the city and county of Denver possesses all the powers conferred by the -charter upon the city council of the city of Denver.
*23 The right of the council to canvass the vote cast at the charter election is not expressly conferred by the amendment, nor is its exercise necessarily incident to the power to call the election. Neither does it belong to the council when acting in the capacity of a hoard of county commissioners. Whatever such hoard might lawfully do, it may do; but the canvassing of the returns of the votes cast at an election is not confided by the law to a board of county commissioners. Not being conferred elsewhere, the authority asserted in the council, if it exists at all, must he found in the provisions of the charter of the city which are applicable to the city and county.
The constitutional amendment requires the election of members of a charter convention to he con-, ducted as provided by law; and if article IV of the old charter can he held applicable to an election possessing the features and characteristics of this, then it may he conceded that the words, ‘ ‘ as provided by law,” have reference to its provisions, and that it furnishes the rule for the conduct of the election. While the only election provided for in the charter, was an election for mayor and other city officers, yet if this had been an election specially authorized for some purely municipal purpose by an amendment to the charter, in which no specific provision had been made for the conduct of the election, then the mode prescribed by the charter for the conduct of other city elections, should he followed. — McCrary on Elections, § 415; People v. County Commissioners, 6 Colo. 202, 209.
But the only election which could be held by the authority of the old charter was a city election. The city was powerless 'to hold an election except for strictly municipal purposes. The provisions of its charter regulating its elections are therefore wholly inapplicable to county elections, or‘to any elections, *24 except those necessary to the conduct pf the affairs-of-a city; and unless this election for members of the charter convention was an election for purely municipal purposes, they are inapplicable to it.
The corporation created by the constitutional amendment is denominated the city and county of Denver. Its boundaries embrace the territory formerly occupied by the city, and other territory belonging to Arapahoe county. A complete county and city government is furnished to the new corporation. The amendment provides it with a mayor, council and other city officers; and with a body having the authority of a board of county commissioners, a sheriff, cleric, recorder, county judge and all other county officers. The duties of city officers are prescribed by the charter, and the duties of county officers by the general laws of the state. That the city government and the county government are in the hands of the same persons, .is immaterial. The distinction between the functions pertaining to a city government and those pertaining to a county government, is not, and does not purport to be, affected by the amendment. While the city and county of Denver is a city, it is also a county; and any election lawfully held lay its inhabitants, is a county as well as a city election.
We find our warrant for the foregoing observations in section 3 .of the amendment, the purpose of which evidently was to equip the new corporation with a complete county as well as city government, until such time as by the adoption of the charter a permanent government should be provided; and in section 2, which requires that every charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable.
Speaking with reference to the nature of the *25 amendment, in People v. Sours, a case recently decided by onr supreme court, 31 Colo. 369, Mr. Justice Steele said:
“Even by constitutional amendment, the people cannot set apart any portion of tbe state in such manner that that portion of the state shall be freed from the constitution, or delegate the making of constitutional amendments concerning it to a charter convention, or give to such charter convention the power to prescribe the jurisdiction and duties of public officers with respect to state government as distinguished from municipal, or city, government. The duties of judges of the district court, county judges,-district attorneys, justices of the peace, and, generally, of county officers, are mainly governmental; and, so far as they are governmental, they may not be controlled by other than state agencies without undermining the very foundation of our government. Under the constitution of the United States, the state government must be preserved throughout the entire state; and it can be so preserved» only by having within every -political subdivision of the state, - such officers as may be necessary to perform the duties assumed by the state government, under the general láws as they now exist or as they may hereafter exist. This distinction between the governmental duties of public officers and their municipal duties is fundamental, and therefore is not avoided or affected by the consolidation. * * * The provision that every charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable, completely contradicts the assumption that the amendment regards such duties as being subject to. local regulation and control. ’ ’
The question before the court- in that case *26 was the validity'of the amendment;.but the language we have quoted is expressive of its opinion of the character of the corporation which was created by the amendment.
Article XIV of the constitution provides for counties and county officers. By section 2 of the amendment, the new corporation is made subject to the general provisions of that article and of the state legislation enacted in pursuance of it; so that, although a city, it is a county equally-with any other legal subdivision of the state to which the constitution and statutes have given the name of county. It is to an election conducted by this corporation, in possession of all the attributes of a county as well as of a city, that we are ashed to apply provisions which, in their scope and purview, are confined strictly to a proceeding incident to the government of a city. In- so far as the functions of a city are to be exercised by the consolidated city and county, the charter and ordinances of the city are applicable to it; but they cannot be applicable to it when exercising the functions of a county. The election was held by the corporation in its combined city and county character, and the purpose for which the election was authorized concerned the corporation both as a city and county. While the election was both a city and county election, it was a single election. No line can be drawn by which its character as a county election may be separated from its character as a city election; and inasmuch as the charter provisions are not applicable to it as a county election, they are not applicable to it at all.
The term “law,” when used without restriction or qualification, refers, not to a special charter or a private act, but to the public law of the state or sovereignty. — See Commonwealth v. Pittsburgh, 14 Pa. State 177; Baldwin v. Philadelphia, 99 Pa. State 164. And we think it clear that the legislature *27 intended the term to be understood in that sense. The portion of section 4 of the amendment providing for the election, and for the effect to be given to the charter and ordinances, is a single sentence, the several parts of which are interdependent. It requires an election to be held and a charter framed, and continues the old charter and ordinances, as far as they may be applicable, in force during the intermediate time. But while the charter of the old corporation is made, as far as applicable, the charter of the new body corporate until after the election is determined, the requirement as to the election is that it shall be conducted, not as provided by that charter, but as provided by law. In view of the intimate relation between the two provisions, if it had been the intention to apply the charter to the election, it occurs to us that the word “charter,” instead of the word “law,” would have been used. As from the nature and purpose of the charter provisions concerning elections, they cannot be regarded as applicable to the election required by the amendment, unless specifically -made applicable, and as they are not specifically made applicable, in order to find the mode of conduct of that election, we must go to the general statute of the state regulating elections. We have referred to the provisions of that statute in so far as they relate to the manner in which the canvass of the returns shall he made. We must resort to those provisions for a settlement of the question before us; and, in conformity with them, the canvass can he made only by the .clerk of the city and county with the assistance of two justices of the peace.
The judgment in each case will he reversed, and an order entered here dissolving the injunction against Juljus Aichele and his eodefendants; and reinstating the injunction allowed against the mayor and council, and making it perpetual. Reversed.