[No. 5695.]

UZZELL ET AL. V. ANDERSON ET AL.

**Counties—City and County of Denver—Change of Boundaries— Offices · and Officers—Terms.**

Section 3, art. 20, Colo. Const., provides that, immediately upon the canvass of the vote showing the adoption of .such amendment, the governor shall issue his proclamation accordingly, and thereupon the city of Denver and all municipal corporations and that part of the county of Arapahoe within the boundaries of said city shall merge into the city and county of Denver, and the terms of all officers of the city of Denver and of all included municipalities and of the county of Arapahoe shall terminate.  Section 6, art. 14, as amended, in effect provides that in each county of less than 70,000 population there shall be elected three county commissioners for the term of four years, two elected in 1904 and one in 1906; and when such population exceeds 70,000, the board may consist of five members, three to be elected in 1904 and two in 1906. Sections 3 of the acts of 1901 (Sess. Laws '01, pp. 133, 138) provide that all county and precinct officers residing in that part of the county of Arapahoe that is made into the counties of Adams and South Arapahoe shall hold their offices for the term for which they have been elected, and the governor shall appoint such other officers as may be necessary to carry on the county government of such counties.  Held, that, although the county of Arapahoe had five county commissioners, and the city and county of Denver is the only other county in the state entitled to such number, still the latter is not the successor of the former, but, so far as the exercise of county functions is concerned, is a new county; and by the use of the word "may" in § 6, supra, it is optional whether the city and county of Denver shall have three or five commissioners; and the members of the board of

county commissioners of Arapahoe county residing within the city and county of Denver are not entitled to act as commissioners of the latter county, but their terms of office terminated in accordance with the provisions of § 3, art. 20, supra.—P. 38.

*Error to the District·Court of the City and County of Denver.*

*Hon. John I. Mullins, Judge.*

Action by Frank Anderson and George E. Smith against Thomas A. Uzzell, William Lawson and Eugene McCarthy, individually and as members of the board of county commissioners of the city and county of Denver. From a judgment in favor of plaintiffs, defendants bring error.

> *Reversed and remanded, with directions to dismiss the complaint.*

Decision *en banc.*   Mr. JUSTICE STEELE, Mr. JUSTICE GUNTER and Mr. JUSTICE BAILEY, dissenting.

Mr. WILLIAM B. TEBBETTS (Mr. HERBERT M. MONROE, of counsel), for plaintiffs in error.

Mr. JOHN T. BOTTOM, for defendants in error.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Defendants in error, as relators, by this action (*mandamus*) seek to compel plaintiffs in error to recognize them as members of the board of county commissioners of the city and county of Denver.

The alternative writ averred that, at the general election held in November, 1902, relators were elected county commissioners of the county of·Arapahoe, qualified as such in January, 1903, served in such capacity until March, 1903, when the members of the city council of the city and county of Denver usurped and intruded themselves into the office of county commissioners of the city and county of Denver; that

thereafter the board of supervisors, elected under the charter of the city and county of Denver, succeeded the city council in the performance of the duties of county commissioners, and continued to do so until the decision of this court in *People ex rel., etc., v. Stoddard,* 34 Colo. 200, when the defendants assumed to perform the duties of county commissioners; that, thereupon, relators demanded to be permitted to meet with respondents and perform the duties of county commissioners, which demand was refused; that, under the laws of Colorado, the board of county commissioners of the city and county of Denver consists of five members.

The return to the alternative writ questioned the sufficiency of the facts stated to constitute a cause of action; denied the averments of the writ and alleged the election of respondents to the office of county commissioners of the city and county of Denver at the general election of 1904, their qualification and entry upon the discharge of the duties of such office.

A hearing resulted in a judgment making the alternative writ peremptory, to review which is this writ of error.

Article XX of the constitution was approved by the people at the general election held November, 1902, the same election at which relators claim to have been elected county commissioners of the then county of Arapahoe. This article has been upheld by this court in a number of cases.—*People v. Sours,* 31 Colo. 369; *Montclair v. Thomas,* 31 Colo. 327; *People v. Adams,* 31 Colo. 477; *Parsons v. People,* 32 Colo. 221; *Denver v. Adams Co.,* 33 Colo. 1; and in what are known as the county officers' cases, and by the court of appeals in *McMurray v. Wright,* 19 Colo. App. 17.

Section 3, article XX, provides: ''Immediately upon the canvass of the vote showing the adoption

of this amendment, it shall be the duty of the governor of the state to issue his proclamation accordingly, and thereupon the city of Denver, and all municipal corporations and that part of the county of Arapahoe within the boundaries of said city, shall merge into the city and county of Denver, and the terms of office of all officers of the city of Denver and of all included municipalities and of the county of Arapahoe shall terminate."

Following the above is a clause excepting from the operation thereof the terms of office of certain of the officers of the city of Denver and of the county of Arapahoe. The board of county commissioners, however, is not included in such exception.

By the plain, unambiguous language of the above section the terms of office of county commissioners of Arapahoe county, to which offices relators claim to have been elected, terminated immediately upon the canvass of the vote showing the adoption of article XX, and the proclamation of the governor to that effect, which was made December 1, 1902.

In *McMurray v. Wright,* 19 Colo. App. 17, at page 21, the court said:

"The moment the constitutional amendment took effect, the municipal corporation known as the city of Denver, and the *quasi* corporation, known as the county of Arapahoe, ceased to exist; and a new body politic and corporate was created, called the city and county of Denver. At the same time the terms of all officers of the city of Denver, the included corporations, and the county of Arapahoe, except the district judges, the county judge and district attorney, expired; but for the purpose of furnishing the new corporation with a government until, under the charter to be framed, an election for the proper officers could be had, the mayor, council boards and certain of the officers of Arapahoe county were constituted by the

amendment officers of the city and county of Denver.''

Defendants in error invoke the doctrine of contemporaneous legislative exposition approved by this court in *People v. Horan,* 34 Colo. 304, in aid of their position.

The argument is, that the general assembly which submitted to the people the amendment to the constitution known as article XX, also submitted an amendment to section 6, article XIV, which, in effect, provided that, in each county in the state of less than 70,000 population, there should be elected three county commissioners for the term of four years; two to be elected in 1904 and one in 1906; that when the population of a county shall equal or exceed 70,000, the board of county commissioners may consist of five members; three to be elected at the general election of 1904 for the term of four years, and two to be elected at the general election of 1906 for the same term. The same general assembly adopted two acts providing for the establishment and appointment of officers; etc., of Adams county and South Arapahoe county, including within such two counties, all of former Arapahoe county not included in the city and county of Denver.—Session Laws 1901, pages 133 and 138.

Sections 3 of such acts are as follows: ''All county and precinct officers who reside in that part of the county of Arapahoe that is hereby made the county of Adams (South Arapahoe) shall hold their respective offices for the terms for which they have been elected or appointed, and they are hereby declared to be legal officers of Adams (South Arapahoe) county; and the governor shall appoint such other officers as may be necessary to carry on the county government of said Adams (South Arapahoe) county, who shall hold their respective offices until

after the general election held in said Adams (South Arapahoe) county next after this act goes into effect and until their successors shall be duly elected and qualified according to law.''

Therefore, counsel say, that article XX, the amendment to section 6, article XIV, and the two acts establishing Adams and South Arapahoe counties having been passed by the same general assembly, should be construed together, and as Arapahoe county had five county commissioners at the time of such legislation, the city and county of Denver being the successor of Arapahoe county, and the only county in the state with a population of 70,000, the amendment to section 6, article XIV, permitting counties with such population to have five commissioners, the acts establishing the counties of Adams and South Arapahoe, continuing in office all county officers residing within their boundaries, including the county commissioners, it is apparent that the general assembly intended that the city and county of Denver should continue to have five commissioners, and that the relators should continue to officiate as such county commissioners of the city and county of Denver until the expiration of the terms of office for which they had been elected.

This argument is not without force, but its weight must be determined by well settled rules of constitutional and statutory construction applicable to the doctrine invoked.

In *People v. May,* 9 Colo. 80, 93, in discussing the doctrine of contemporaneous interpretation, this court said:

''In cases of doubt, such interpretation has its place and weight. In the case of *The People v. Wright,* 6 Colo. 92, contemporaneous interpretation was allowed weight respecting a point upon which the amendment construed was silent. 'Where, how-

ever, no ambiguity or doubt appears in the law, * * * the court should confine its attention to the law, and not allow extrinsic circumstances to introduce a difficulty where the language is plain. To allow force to a practical construction in such a case would be to suffer manifest perversions to defeat the evident purpose of the law-makers.'—Cooley's Const. Lim. 84. 'Contemporary construction can never abrogate the text; it can never fritter away its obvious sense; it can never enlarge its natural boundaries.'—Story on Const., § 407.''

Here the language admits of no ambiguity or doubt; it could scarcely be plainer; "the terms of office of all officers * * * of the county of Arapahoe shall terminate.''

Further, the amendment to section 6, article XIV, while mandatory as to the number of county commissioners of counties of less than 70,000, by the use of the word *may,* when the population of any county shall exceed 70,000, leaves it optional with such counties to have three or five commissioners.

We do not agree with the contention of counsel for defendants in error, that the city and county of Denver is the successor of the county of Arapahoe, but think that the city and county of Denver, in so far as the exercise of county functions is concerned, is a new county, created by the merger and consolidation of the municipalities and territory within the boundaries designated by article XX, and, as such new county, comes within the purview of the amendment to section 6, article XIV, *supra,* it clearly being the intention of the general assembly that such section should apply to the city and county of Denver, being the only county with a population exceeding 70,000, and that the election of three commissioners in 1904 was pursuant to the provisions of such amendment, and that such city and county may

elect two commissioners, under the provisions of such amendment, at the election of 1906.

The judgment of the court below, being contrary to the views herein expressed, is reversed, the cause remanded, with directions to the court below to dismiss the complaint.

Decision *en banc.*                              *Reversed.*

Mr. JUSTICE STEELE, Mr. JUSTICE GUNTER and Mr. JUSTICE BAILEY, dissenting.

---

Mr. JUSTICE BAILEY dissents:

This is an action, instituted in the district court of the city and county of Denver by defendants in error, for a writ of *mandamus* to compel plaintiffs in error to permit defendants in error to sit with them as a board of county commissioners. Upon hearing the writ was granted and plaintiffs in error brought the action here.

Defendants in error were elected as county commisioners of the county of Arapahoe in November, 1902, and assumed the duties of the office in the January following, acting with three other commissioners theretofore elected.

In March, 1903, after the adoption of the 20th article of the constitution, the members of the city council of the city and county of Denver assumed the duties of county commissioners, and continued to perform such duties until the first secular day of July, when the duties of the board of county commissioners were assumed by the board of supervisors, which had theretofore been elected to succeed the city council. This board of supervisors continued to perform such duties until July, 1905, when it was determined by this court that the board of supervisors did not have such power, but that the functions and duties of the board of county commissioners must be exercised by those elected for such purpose.

In November, 1904, plaintiffs in error were elected as three of the county commissioners of the city and county of Denver. The term of office to which defendants in error were elected did not expire until January, 1907. Upon the assumption of the offices of county commissioners by plaintiffs in error in July, 1905, defendants in error sought to act with them as a board of county commissioners and were refused, and this action was brought.

Section 6 of article XIV of the constitution, as originally adopted, provided that each county should have a board of county commissioners, and that in counties where the population exceeded 10,000 the board might consist of five members. Arapahoe county was a county of this character and the board consisted of five members.

In 1901 the general assembly passed an act, by the terms of which an amendment to section 6 of article XIV was to be submitted to a vote of the people. This amendment was adopted at the November election, 1902. By the terms of section 6, as amended, each county having a population of less than 70,000 was entitled to a board of county commissioners consisting of three members, and it was provided that when the population of any county was equal to or exceeded 70,000, the board of county commissioners may consist of five members.

As we have seen, previous to the adoption of this amendment the board of county commissioners of Arapahoe county consisted of five members, and, inasmuch as it had a population exceeding 70,000, no change is made in the number of members composing the board of county commissioners. At any rate, the provision for a board of commissioners consisting of three members was limited to counties having a population of less than 70,000, and neither the present city and county of Denver nor the old county of

Arapahoe was of such character. The same session of the legislature that provided for the submission of an amendment to section 6 of article XIV also provided for the submission of article XX of the constitution.

Plaintiffs in error base their contention that defendants in error are not entitled to act with them as a board of county commissioners upon the following provision contained in section 3 of article XX:

"Immediately upon the canvass of the vote showing the adoption of this amendment, it shall be the duty of the governor of the state to issue his proclamation accordingly and thereupon the city of Denver and all municipal corporations and that part of the county of Arapahoe within the boundaries of said city shall merge into the city and county of Denver and the terms of office of all officers of the city of Denver and of all included municipalities and of the county of Arapahoe shall terminate."

It is contended that these words should be given a literal construction, and that the two members of the board of county commissioners of Arapahoe county residing within the limits of the territory known as the city and county of Denver, and whose term of office had not expired, were no longer entitled to act as a portion of the board of county commissioners.

Laws are to be construed with reference to the objects to be accomplished by them, and with reference to the circumstances existing at the time of the passage and the necessity for their enactment. Where a statute would operate unjustly, or absurd consequences would result from a literal interpretation of the terms and words used, the intention of the framers, if it can fairly be gathered from the whole act, will prevail.—*Murray v. Hobson*, 10 Colo. 73;

*Dunton et al. v. People,* 36 Colo. 128, and cases there-
in cited.

In order to determine the meaning or construc-
tion which the legislature or people intended should
be given to any particular phrase or sentence in an
act of the legislature or an article of the constitution,
it is necessary first to determine the object, purpose
and scope of the act, and give such construction to the
phrase as will best carry out the purpose of the law
without doing violence to other rules of interpreta-
tion, or without making the meaning absurd or un-
conscionable.

In relation to this article XX, Mr. Justice Gab-
bert, in his concurring opinion in the case of *The
People v. Sours,* 31 Colo., at page 409, says:

"The specific purpose of article XX is to confer
upon the city of Denver, and cities of the first and
second class, the power of self-government, with re-
spect to certain governmental matters based upon
special constitutional provisions."

A careful reading of this article demonstrates
that that is the sole purpose, and that it was not in-
tended to interfere with the peculiar functions of
county government, and it is upon this theory that
the cases of *People ex rel. Attorney General v. John-
son,* 34 Colo. 143, and *People ex rel. v. Horan,* 34
Colo. 304, and other like cases were determined. In
the Horan case it is said, "that the rule of contempo-
raneous legislature exposition has been adopted in
this state."

In the case of *The People v. Wright,* 6 Colo. 92,
which is cited with approval in the Johnson case, it
is said:

"Great deference is due to legislative exposition
of a constitutional provision, especially when it is
made almost contemporaneous with such provision."

With this in mind it will be observed that the phrase contained in section 3, "the terms of office of all officers * * * of the county of Arapahoe shall terminate," is not limited to the officers of the county of Arapahoe residing within the territory contemplated to be embraced within the city and county of Denver, but it is unlimited and refers to all of the offices of the county of Arapahoe. That it was not intended by the legislature, nor by the people, to be given a literal construction is apparent, because the same session of the legislature which provided for the submission of the 20th amendment, and of the amendment to section 6 of article XIV, passed acts creating the counties of Adams and South Arapahoe from the territory which had formerly been a portion of Arapahoe county. Section 3 of the act creating Adams county contains the following provision:

"All county and precinct officers who reside in that part of the county of Arapahoe that is hereby made the county of Adams shall hold their respective offices for the terms for which they have been elected or appointed, and they are hereby declared to be legal officers of Adams county."—Section 3, p. 134, Session Laws of 1901.

A similar provision is contained in the act creating the county of South Arapahoe.—Section 3, Session Laws 1901, p. 139.

If it was intended that the terms of office of all officers of the county of Arapahoe should terminate, why did the same legislature provide for the continuance in office of all county and precinct officers who resided in the counties of Adams and South Arapahoe. The terms of office of all officers could not terminate and a portion of the officers continue in office for the full term.

Section 6 of the Adams county act provides:

"All county records and all real and personal property now belonging to Arapahoe county shall remain the property of said Arapahoe county, but in lieu thereof the said county of Arapahoe shall pay to the said county of Adams such sum of money and in such manner as shall be determined by the board of commissioners of said counties."—Section 6, Session Laws 1901, p. 135.

Section 11 of the act creating South Arapahoe county provides that the board of county commissioners of the county of South Arapahoe, in connection with the board of commissioners of the county of Arapahoe, shall have full power and authority to adjust and settle all matters of revenue proper to be adjusted on account of the formation of the new county of South Arapahoe.—Section 11, p. 141, Session Laws 1901.

If the contention of plaintiffs in error is correct, these matters in relation to the counties of Adams and South Arapahoe could not be determined and adjusted by the county commissioners of Arapahoe county, for there were no county commissioners to determine and adjust them.

The same session of the legislature which submitted to the people article XX also submitted the amendment to section 6, article XIV, which provides, inter alia:

"In each county having a population of less than 70,000 there shall be elected for a term of four years each three commissioners * * * two of said commissioners shall be elected at the general election in the year 1904 and at the general election every four years thereafter. The other one of said commissioners shall be elected at the general election in the year 1906 and at the general election every four years thereafter, provided that when the population

of any county shall equal or exceed 70,000, the board of commissioners may consist of five members, any three of whom shall constitute a quorum for the transaction of business. Three of said commissioners in said county shall be elected at the general election in the year 1904 and at the general election every four years thereafter, and the other two of said commissioners in such county shall be elected at the general election in the year 1906 and every four years thereafter."

This constitutional amendment was adopted by the people at the same time as article XX.

As said in the case of *The People v. Horan:* "The only county in the state which had a population equal to or exceeding 70,000 was Arapahoe, out of which the city and county of Denver was created by the adoption of article XX * * * So that after the adoption of article XX the only county falling within the provisions of the amendment to section 6 was the city and county of Denver." And the city and county of Denver could not have three commissioners, because counties entitled to three commissioners were restricted to those having a population of less than 70,000. Inasmuch as all counties must have county commissioners, and provision was made for the city and county of Denver, it could not have been intended that the office should be suspended, nor can it be said that the term of office of the two commissioners of the former county of Arapahoe, residing within the limits of the city and county of Denver, should be terminated because section 6 provides that three of the commissioners should be elected in 1904 and two in 1906. If the term of office of the two were to be terminated, then the city and county of Denver would have but three commissioners until the election of 1906, and the provision of the constitution is that it shall have

five. If it was intended that the three commissioners should perform the duties of county commissioners for such county for two years and after that there should be five, section 6 as amended would have contained some provision to that effect. It is fundamental that the whole constitution must be construed together, and it must be so construed if possible that it will all stand, but if the provision of article XX be given the construction contended for by plaintiffs in error, then all that part of section 6, article XIV, relating to counties of more than 70,000 population is vain and idle.

These provisions of the amendments to the constitution, and of the statute enacted at the same session of the legislature, are entitled to be considered in determining whether or not the terms of office of the county commissioners of Arapahoe county should be terminated and the duties performed by other persons who had not been elected, and who had not qualified to act as a board of county commissioners.

In the Johnson case it is said:

"The same rule of construction applied by this court to article XX (in the Sours case) must be applied to the charter framed under that article. This court having held that article XX could not be sustained if it purported to cut loose the city and county of Denver from any and all constitutional limitations and restrictions, it must follow that a charter framed thereunder and in so far as it purports to accomplish the same thing, cannot be maintained. Upon referring to the majority opinion in the Sours case: 'Even by constitutional amendment the people cannot set apart any portion of the state in such a manner that that portion of the state shall be freed from the constitution.' In what respect 'freed from the constitution'? To what extent 'freed from the constitution'? May the people of any por-

tion of the state be freed from any article or any section of any article of the constitution? If yea, where and when must the freeing process cease?"

If the constitution provided for offices of county commissioners in all of the counties, these offices cannot be abolished in any one of the counties, even by constitutional amendment. If the offices cannot be abolished in fact, they cannot be so treated in effect by terminating the term of the officer and providing for the performance of the duties and functions of such offices by some other officer or division of government. What may not be done directly may not be done by indirection.

In the Johnson case we further said that a close analysis of the language in the opinion in the Sours case disclosed that the people, even by constitutional amendment, cannot free any portion of the state from the operation of the constitution, and that no portion of the state can be freed from any provision of the constitution. If this was true when it was said in the Johnson case, it is still true. If, by any constitutional amendment, the people could not authorize the city and county of Denver to make provision for two county judges when other counties had but one, and if they could not authorize the city and county of Denver to have other than regular constitutional officers perform duties of the county officers, then they could not suspend or abolish such offices by terminating the term of the officer.

Section 6 of article XIV, providing that counties having a population of more than 70,000 may have a board of five commissioners, and the city and county of Denver being a county of that class, and this article providing that three of such commissioners should be elected in 1904 and two in 1906, and defendants in error being duly elected and qualified commissioners of the county of Arapahoe, which is the

predecessor of the city and county of Denver, and their terms of office not expiring until the constitution provides for the election of two commissioners, it must be conceded that it was the intention of the constitution makers that they should continue in office until the expiration of their term and their successors should be elected and qualified. By giving this construction to the various acts of the legislature and the various constitutional amendments, the constitution will be found to apply to all counties alike, otherwise there will be one rule for the city and county of Denver and another for all other counties in the state, a thing which under all previous decisions of this court cannot be done.

Mr. JUSTICE STEELE and Mr. JUSTICE GUNTER concur in the conclusions reached in the foregoing opinion.