Mr. Justice McWilliams
delivered the opinion of the Court.
This is a tax case and the issue to be resolved is whether certain road construction equipment and machinery was subject to assessment for the purpose of ad valorem taxation on the official assessment date for 1963. Stated in somewhat reverse fashion, the issue is whether this particular equipment and machinery was exempt from such an assessment because a specific ownership tax had already been paid, on it for the calendar year of 1963.
E. J. Rippy & Sons, a partnership which will hereinafter be referred to as Rippy, is engaged in the business of constructing and maintaining highways and has its home office in New Castle, Colorado. On February 1, 1963, Rippy was operating in Montezuma County, and on that date the county assessor in Montezuma County, pursuant to 1960 Perm. Supp., C.R.S. ’53, 137-3-2, pro-' ceeded to list and assess the property of Rippy then located within that county. This dispute arises out of the fact that the county assessor listed and assessed certain pieces of road building equipment and machinery which Rippy felt should not have been thus listed and assessed.
After exhausting its administrative remedies, Rippy *263 then brought an action against the Board of County Commissioners for the County of Montezuma, seeking to compel the correction of what it contends was an erroneous assessment of certain road building equipment and machinery which Rippy owned and which, as already noted, was physically located in Montezuma County on the assessment date in 1963. Specifically, the items of equipment and machinery with which we are here concerned are nine in number and are as follows: two Le Tourneau scrapers; three Euclid dump trucks; one Caterpillar motor grader; one Le Tourneau carryall; one I.R. air compressor; and one Gardner-Denver 600 rotary pump.
It was further alleged in the complaint that prior to the assessment date for 1963 Rippy, through the county clerk for Garfield County, had registered and paid a specific ownership tax upon each of the nine pieces of machinery with which we are here concerned.
By answer the County Commissioners admitted the assessment of this particular machinery and also admitted that Rippy had registered and paid a specific ownership tax to the county clerk of Garfield County upon each of the nine pieces of machinery. However, the County Commissioners denied the “legality” of such registration and alleged that under the applicable statutes these particular items of equipment and machinery were not subject to the specific ownership tax, and therefore were subject to assessment for the purpose of ad /alorem taxation.
Upon trial, the trial court held that the assessment was improper and that the machinery in question was not subject to any assessment for the purpose of the imposition of ad valorem taxation. By writ of error the County Commissioners seek reversal of this judgment. . Disposition of this controversy turns upon the construction and interpretation to be given certain constitutional provisions and statutes in - effect in 1963. •Reference will now be made to those constitutional *264 provisions and statutes which bear upon the resolution of this writ of error.
Article X, section 6 of the Colorado constitution provides as follows:
“Section 6. Other exemptions void — specific ownership tax on motor vehicles. — All laws exempting from taxation, property other than that hereinbefore mentioned, shall be void; provided however, that the general assembly shall enact laws classifying motor vehicles, trailers and semi-trailers and requiring the payment of a graduated annual specific ownership tax thereon, which said tax shall be in addition to, and payable to the proper county officer at the same time as state registration or license fees.
“Said graduated annual specific ownership tax shall be in lieu of all ad valorem taxes upon such property ....” (Emphasis supplied.)
In 1960 Perm. Supp., C.R.S. ’53, 13-1-1(48) “special mobile equipment” is defined as follows:
“Special mobile equipment. Special mobile equipment consists of vehicles, self-propelled or otherwise, designed primarily for operation or use on or off the public highways and only incidentally used or moved on such highways. This definition shall include snowplows, road construction, or maintenance equipment, ditch digging apparatus, water well boring rigs, fire fighting equipment, and vehicles designed to transport construction equipment and equipment used in connection with construction equipment, maintenance and repair thereof, temporarily or permanently mounted on such vehicles provided such equipment is transported from yard to job, job to job, or job to yard____” (Emphasis supplied.)
In 1960 Perm. Supp., C.R.S. ’53, 13-5-2 concerning vehicles exempt from registration we find the following:
“Vehicles exempt from registration. — Vehicles owned and operated by any department of the federal government, fire fighting vehicles, police patrol wagons and *265 police ambulances; and farm tractors, farm trailers, hay-balers, combines and other heavy movable farm equipment primarily used on farms and not on the highways, and road rollers and road machinery temporarily operated or moved upon the highways need not he registered under this article.” (Emphasis supplied.)
In 1960 Perm. Supp., C.R.S. ’53, 13-5-23(11) appears the following:
“Owners of special mobile equipment may elect to pay the same registration as provided in paragraph (b) of subsection (3) of this section and the ton mile tax.....”
As applied to it, Rippy contends that these several statutes should be so construed as to result in the following determinations:
1. That the nine pieces of road construction equipment and machinery with which we are here concerned constitute “Special Mobile Equipment,” as this term is defined in 1960 Perm. Supp., C.R.S. ’53, 13-1-1(48);
2. That under 1960 Perm. Supp., C.R.S. ’53, 13-5-2 Rippy “need not” make application for the registration of this road building machinery; but
3. That under 1960 Perm. Supp., C.R.S. ’53, 13-5-23(11) Rippy “may elect,” however, to make application for the registration of its special mobile equipment.
Completing the circle, then, Rippy contends that having “elected” to make application for the registration of its special mobile equipment and having in fact paid a special ownership tax thereon, such property is not thereafter subject to assessment by the county assessor by virtue of Article X, section 6 of the Colorado constitution, which provides, in part, that the graduated annual specific ownership tax shall be in lieu of all ad valorem taxes upon such property. With the foregoing analysis of the various statutory and constitutional provisions we are in general accord.
The County Commissioners, as we understand it, do not contend that the equipment and machinery here involved does not come within that section of the statute *266 defining mobile equipment. On the contrary, apparently they concede that the merchandise under consideration is special mobile equipment. Their basic position is that the registration requirements are by 1960 Perm. Supp., C.R.S. ’53, 13-5-1 limited to motor vehicles, trailers, or semi-trailers which are primarily designed to be operated or drawn upon any highway of this state. Since the nine pieces of equipment and machinery with which we are here concerned are admittedly not “primarily designed” to be operated or drawn on public highways, the County Commissioners argue that such fact ends the whole matter, and that Rippy may not make application for the registration of its machinery and equipment and pay a specific ownership tax thereon.
We do not so view the matter. True, the owners of vehicles primarily designed for travel on public highways must register them and also must pay the specific ownership tax thereon. But in addition thereto, by virtue of 1960 Perm. Supp., C.R.S. ’53, 13-5-23(11), the owners of special mobile equipment, though they need not, may nevertheless also thus register such equipment.
The County Commissioners also contend that 1960 Perm. Supp., C.R.S. ’53, 13-5-23(11) only allows the owners of special mobile equipment to pay the same annual registration fees and ton mile tax as does a farmer and they point out that this particular section of the statute does not even make any reference to the payment of a specific ownership tax. In thus contending the County Commissioners are in error.
It is axiomatic that in construing this article, which incidentally is entitled “Registration and Specific Ownership Tax, Ton Mile Tax, Passenger Mile Tax,” the article must be construed as a whole, and the individual sections within the article must be read in the context of the entire article. See, for example, Thompson v. Jack, 90 Colo. 470, 10 P.2d 947. Also, if possible, the various sections in the article should be so construed as to harmonize, one with the other. See, for example, *267 People v. Morgan, 79 Colo. 504, 246 Pac. 1024. And while 1960 Perm. Supp., C.R.S. ’53, 13-5-23(11) does not in so many words mention “specific ownership tax,” it does provide for “registration.” And 1960 Perm. Supp., C.R.S. ’53, 13-5-3 provides that the owner, upon filing an application for “registration,” shall pay, among other fees, the “annual specific ownership tax on the vehicle for which the license is to issue.” So, payment of the specific ownership tax is thereby necessarily tied into the act of filing an application for registration.
We regard our views on this general subject to be in harmony with the rationale of Cooper Motors, Inc. v. Board of County Commissioners, 131 Colo. 78, 279 P.2d 685, particularly as concerns the interpretation and effect to be given Article X, section 6 of the Colorado constitution.
Suffice it to say, in our view the trial court committed no error in its determination that the assessment here under attack was improper.
The judgment is therefore affirmed.