CITY OF AURORA, Colorado; City of Thornton, Colorado; City of Westminster, Colorado; City of Broomfield, Colorado; City of Federal Heights, Colorado; and City of Brighton, Colorado, Plaintiffs–Appellants and Cross–Appellees,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ADAMS, Colorado; and the following officers in their official capacities, Helen Hill, Treasurer, Terry Funderburk, Finance Director, David Wilson, Budget Officer, Defendants–Appellees and Cross–Appellants.

Nos. 94CA0180, 94CA0185.

Colorado Court of Appeals, Div. III.

Oct. 20, 1994.

Rehearing Denied Dec. 8, 1994.

Certiorari Granted Aug. 21, 1995.

376

Charles H. Richardson, City Atty., Michael
J. Hyman, Julia A. Bannon, Asst. City Attys.,
Aurora, for plaintiff-appellant and cross-ap-
pellee City of Aurora.

Griffiths & Tanoue, P.C., Susan K. Griffiths, Denver, Kevin Maggio, City Atty., Margaret A. Emerich, Asst. City Atty., Thornton, for plaintiff-appellant and cross-appellee City of Thornton.

Martin R. McCullough, City Atty., Ruthanne Gartland, Asst. City Atty., Westminster, for plaintiff-appellant and cross-appellee City of Westminster.

Roy S. Howard, City Atty., James W. Rourke, Asst. City Atty., Broomfield, for plaintiff-appellant and cross-appellee City of Broomfield.

Daniel, McCain, Brown, Wallace & Brubaker, LLC, Margaret R. Brubaker, Leonard H. McCain, Brighton, for plaintiff-appellant and cross-appellee City of Brighton.

Windholz & Associates, David S. Williamson, William P. Hayashi, James A. Windholz, Boulder, for plaintiff-appellant and cross-appellee City of Federal Heights.

Robert J. Loew, County Atty., Ronald A. Carl, Rita M. Harrell, Asst. County Attys., Brighton, for defendants-appellees and cross-appellants.

Bruce T. Barker, Office of Weld County Atty., Greeley, amicus curiae for Colorado Counties, Inc.

Opinion by Judge DAVIDSON.

In this action for a declaratory judgment, injunctive relief, and damages, plaintiffs, City of Aurora, City of Thornton, City of Westminster, City of Brighton, City of Broomfield, and City of Federal Heights, appeal from the denial of a preliminary injunction prohibiting defendants, the Adams County Board of Commissioners, and, in their official capacities, Helen Hill, Adams County treasurer, Terry Funderburk, Adams County finance director, and David Wilson, Adams County budget officer, (Adams County) from allocating specific ownership tax revenue to the County Road and Bridge Fund. Adams County cross-appeals from the partial summary judgment entered in favor of plaintiffs in which the trial court declared that specific ownership tax revenue may not lawfully be allocated to the County Road and Bridge Fund.

Because it is dispositive, we first address the issue raised by Adams County on cross-appeal. As to that issue, we reverse. And, as a consequence, we affirm the denial of the preliminary injunction on grounds different from that relied upon by the trial court.

## I.

Plaintiffs filed this action to challenge the practice by Adams County of allocating specific ownership tax revenue to the County Road and Bridge Fund. According to plaintiffs, specific ownership tax revenue, pursuant to statute, must be placed in the general fund of the county receiving the funds. Thus, they argue, it is illegal for Adams County to allocate any of the specific ownership tax revenue to the County Road and Bridge Fund. For several reasons, we do not agree.

## A.

Section 30–25–105, C.R.S. (1986 Repl.Vol. 12A) provides that:

A fund to be known as the county general fund is hereby created and established in each of the counties of the state of Colorado. The county general fund shall consist of all county revenue except that specifically allocated by law for other purposes.

Colo. Const. art. X, § 6, provides for the creation of a specific ownership tax upon motor vehicles, wheeled trailers, semi-trailers, trailer coaches, and mobile and self-propelled construction equipment in lieu of ad valorem taxes, to be "apportioned, distributed, and paid over to the political subdivisions of the state in such manner as may be prescribed by law." *See also* § 42–3–101, et seq., C.R.S. (1993 Repl.Vol. 17).

Because the funds collected and distributed as specific ownership taxes are not allocated by this constitutional provision to any specific purpose, plaintiffs maintain that they must be placed in the county general fund. On the other hand, Adams County argues that the specific ownership taxes are specifically allocated to the road and bridge fund by law pursuant to the budgetary authority accorded a board of county commissioners by § 30–11–107, C.R.S. (1986 Repl.Vol. 12A) and

§ 29–1–108, C.R.S. (1994 Cum.Supp.). We agree with Adams County.

A county acts through its board of county commissioners which "possesses only such powers as are by the Constitution and statutes expressly conferred upon it, and, in addition, such implied powers as are reasonably necessary to the proper execution of its express powers." *Robbins v. County Commissioners,* 50 Colo. 610, 615, 115 P. 526, 528 (1911). "[T]he legislature can and does, at times in Colorado, delegate limited police and legislative powers to local governmental units" including counties. *See Asphalt Paving Co. v. Board of County Commissioners,* 162 Colo. 254, 259, 425 P.2d 289, 292 (1967).

■ Pursuant to legislative authority, county commissioners are accorded broad discretion on budgetary matters. *See Tihonovich v. Williams,* 196 Colo. 144, 582 P.2d 1051 (1978). County commissioners have the exclusive power to adopt an annual budget, which is presumptively valid. *Beacom v. Board of County Commissioners,* 657 P.2d 440 (Colo.1983); § 30–11–107(2)(b), C.R.S. (1986 Repl.Vol. 12A). In reviewing budgeting actions, courts must give great deference to the county commissioners' determinations, and such actions may be nullified only if they are a clear abuse of discretion. *Johns v. Miller,* 42 Colo.App. 97, 594 P.2d 590 (1979).

■ Accordingly, by law, the defendant board possesses broad discretionary authority to develop and adopt a county budget; thus, it may determine to what use the specific ownership tax moneys may be put. We perceive no abuse of discretion by that board in placing moneys derived from the specific ownership tax in the county road and bridge fund. *See* § 30–11–107; *Tihonovich v. Williams, supra.*

### B.

Plaintiffs contend that this construction of § 30–25–105 gives the board of county commissioners unwarranted discretionary power over the creation and financing of county funds not intended by the General Assembly. We do not agree.

■ A county ordinance or resolution and a state statute may both remain effective so long as they do not contain express or implied terms in irreconcilable conflict. *Wilkinson v. Board of County Commissioners,* 872 P.2d 1269 (Colo.App.1993). However, a county may not adopt an ordinance or resolution which is in conflict with a state statute. *See* § 30–15–411, C.R.S. (1986 Repl.Vol. 12A); *see also C & M Sand & Gravel v. Board of County Commissioners,* 673 P.2d 1013 (Colo.App.1983). If there are conflicting terms, the local legislation may be preempted by the state statute. *Board of County Commissioners v. Martin,* 856 P.2d 62 (Colo.App.1993).

■ Thus, the board of county commissioners has broad discretion over budgetary matters only within the power granted by the General Assembly. If a county budgetary action conflicts with an explicit state statute as to the creation or distribution of county funds, the state statute controls. *See City of Greeley v. Board of County Commissioners,* 644 P.2d 76 (Colo.App.1981) (transfer of moneys by board of county commissioners from general fund to road and bridge fund conflicted with state statute prohibiting such a transfer); *cf. Tisdel v. Board of County Commissioners,* 621 P.2d 1357 (Colo.1980) (board of county commissioners was without power to reduce the salary of the district attorney as that decision conflicted with state constitutional provision prohibiting change in salary of elected officials during their term of office).

### C.

Nonetheless, according to plaintiffs, the statutory scheme for the creation and financing of the county road and bridge fund must be read restrictively. In support of this contention, they argue that changes in the language of § 43–2–202(1), C.R.S. (1993 Repl. Vol. 17), enacted in 1970, eliminated any discretionary appropriations by the board of county commissioners. We disagree.

Section 43–2–202(1) provides for the creation of a county road and bridge fund in each county:

Such fund shall consist of the revenue derived from the tax authorized to be levied under section 43–2–203 for road and bridge construction, maintenance, and administration, all moneys received by the county from the state or federal governments for expenditure on roads and bridges, and any other moneys which may become available to the county for such purpose.

Prior to 1970, the predecessor statute, C.R.S.1963, 120–1–2, read as follows:

A fund to be known as the county road and bridge fund is hereby created and established in each of the counties of the state of Colorado. The county road and bridge fund shall consist of all moneys received from state and federal sources to be expended by a county for road and bridge construction, maintenance and administration; appropriation by the county commissioners; and all other moneys available for road and bridge purposes.

■ Contrary to plaintiffs' contentions, the 1970 amendments do not simply eliminate county appropriations as a method of funding for roads and bridges. The amended language provides for a road and bridge tax levy and broadens the "all other moneys" provision to include all moneys "which may become available."

■ Adoption of the construction of §§ 30–25–105 and 43–2–202(1) urged by plaintiffs would render meaningless the phrase "any other moneys which may become available to the county for such purpose." "May" implies a certain amount of discretion; thus, moneys which *may* become available for road and bridge purposes are not "specifically allocated" for that purpose and, according to plaintiffs, therefore would have to be placed in the general fund. However, we must presume that the General Assembly intended the entire statute to be effective, and we must thus construe the statute so as to give sensible effect to all its parts. *See Colorado State Board of Nursing v. Bethesda Psychiatric Hospital,* 809 P.2d 1051 (Colo.App.1990).

■ Accordingly, we read § 30–25–105 to provide that county revenues not allocated by constitutional provision or by stat-

ute to some other purpose may be allocated to the road and bridge fund. Funds not allocated by the county to any specific purpose pursuant to budgetary authority must be placed in the general fund and used for "ordinary county expenses." *See* § 30–25–106, C.R.S. (1986 Repl.Vol. 12A).

### D.

Relying upon *McMurray v. Wright,* 19 Colo.App. 17, 26, 73 P. 257, 261 (1903), in which the court explained that "[t]he term 'law,' when used without restriction or qualification, refers not to a special charter or a private act, but to the public law of the state or sovereignty," and *City of Thornton v. Farmers Reservoir & Irrigation Co.,* 194 Colo. 526, 536, 575 P.2d 382, 390 (1978), in which the court ruled the phrase "as provided by law" may refer to constitutional provision as well as to state statute, plaintiffs contend that it requires a specific state statute or constitutional provision in order to allocate funds for specific purposes other than the county general fund. We do not view these cases as dispositive.

■ As discussed, the county derives its budgetary power from state statutes, and, unless in direct conflict with some statutory provision, its discretionary acts are undertaken by authority of such laws.

We further note that the supreme court, although it has not addressed the issue directly, has not adopted the construction urged by plaintiffs. In *Colorado Department of Social Services v. Board of County Commissioners,* 697 P.2d 1 (Colo.1985), the court assumed without discussion that specific ownership taxes properly were utilized by the county for the purpose of public assistance costs although not mandated for such use by statute or constitution.

### E.

Plaintiffs also rely upon *City of Greeley v. Board of County Commissioners, supra,* and *City of Colorado Springs v. Board of County Commissioners,* 648 P.2d 671 (Colo.App. 1982) to argue that the use of specific ownership taxes for road and bridge purposes is

expressly prohibited by state statute. Again, we disagree.

Section 30–25–106(1), C.R.S. (1986 Repl. Vol. 12A) provides that:

> The board of county commissioners is authorized to appropriate money from the county general fund for all ordinary county expenses, including the administrative expenditures of elective and appointive offices, library, agricultural extension service, fire protection, fairs, advertising, airports, health, rodent control, water conservation, weed control, pest control, predatory animal control, and all other general county purposes authorized by law, except expenditures for public welfare, roads and bridges, debt service, public hospitals, public works, contingencies, and purposes voted by the electors.

This section makes unavailable for road and bridge use any money contained in the county general fund. Road and bridge funding "shall be from a special levy for roads and bridges, together with moneys from state or federal governments for expenditures on roads and bridges, and other moneys which may become available for roads and bridges, except money from the general fund." *City of Greeley v. Board of County Commissioners, supra,* 644 P.2d at 77. Once money has been placed in the county general fund there is a specific statutory prohibition against its use for road and bridge purposes, among others.

Plaintiffs, however, have not alleged that Adams County is appropriating money from the general fund and placing it in the County Road and Bridge Fund. Because we have determined that there is no statutory mandate that the specific ownership tax be placed in the general fund, Adams County is free to allocate some or all of the money to the County Road and Bridge Fund. *See* § 43–2–202(1) (specifically permitting acceptance into fund of "any other moneys which may become available" for road and bridge construction, maintenance, and administration); *cf. Colorado Department of Social Services v. Board of County Commissioners, supra;* § 26–1–123, C.R.S. (1989 Repl.Vol. 11B) (county social services fund shall consist, *inter alia,* of "such other moneys as may

be provided from time to time from other sources").

## F.

Finally, plaintiffs assert that the General Assembly intended that road and bridge funds be acquired primarily by the county road and bridge tax levy, which, pursuant to § 43–2–202(2), C.R.S. (1993 Repl.Vol. 17), must be shared with the municipalities within the county, and not from specific ownership taxes. Accordingly, plaintiffs contend, specific ownership tax moneys are not moneys which "may become available" for road and bridge purposes. Again, we do not agree.

The collection and distribution of the specific ownership tax is closely tied to vehicle use. Payment occurs at the time of, and is tied to, the registration of vehicles and certain other equipment capable of operation on streets and highways. *See Board of County Commissioners v. E.J. Rippy & Sons,* 161 Colo. 261, 421 P.2d 461 (1966). The tax is expressly in lieu of all ad valorem taxes on such vehicles and equipment. *See Cooper Motors, Inc. v. Board of County Commissioners,* 131 Colo. 78, 84, 279 P.2d 685, 688 (1955) (Colo. Const. art. X, § 6 "created a class of 'motor vehicles, etc.' within the broad classification of personal property, and commanded that this new 'class of subjects' be separately treated for purposes of taxation.").

Certain of the specific ownership taxes collected are apportioned to each county based upon the mileage of the state highway system located within each county compared with the total mileage of the state highway system. Section 42–3–106(7), C.R.S. (1993 Repl.Vol. 17). Failure to apply for registration of a vehicle and pay the required amounts, including the specific ownership tax, is considered a traffic infraction even though the registration requirement relates to revenue rather than safety. *See* § 42–3–102(1), C.R.S. (1993 Repl.Vol. 17); *Carlson v. District Court,* 116 Colo. 330, 180 P.2d 525 (1947) (construing predecessor registration statute).

The proceeds from license fees, registration fees, and other charges with respect to the operation of motor vehicles in Colorado,

except administration costs, must "be used exclusively for the construction, maintenance, and supervision of the public highways." Colo. Const. art. X, § 18.

While we do not infer necessarily that the specific ownership tax is a "charge with respect to the operations of a motor vehicle upon any public highway in this state" as contemplated by Colo. Const. art. X, § 18, *see Colorado Department of Social Services v. Board of County Commissioners, supra* (approving use of ownership tax money for public assistance fund), nevertheless, in our view, at a minimum, allowing specific ownership taxes to be available for county road and bridge funds is not inconsistent with an apparent statutory design of drawing funds for road construction or maintenance from vehicle-related sources of revenue.

Again, although the supreme court did not address the issue directly, in a recent case in which the elimination of an invalid disparity between specific ownership tax rates applicable to interstate and intrastate vehicles ten years old or older was determined as not frustrating "the General Assembly's efforts to raise revenue for the maintenance of its roads and highways," the court impliedly approved the use of specific ownership taxes for such purposes. *See Riverton Produce Co. v. State,* 871 P.2d 1213, 1228 (Colo.1994).

From this, we must surmise that, while Adams County is not required to place the specific ownership tax money into the County Road and Bridge Fund, it certainly is not prohibited from doing so. Thus, the partial summary judgment in favor of plaintiffs on this issue was in error.

## II.

Plaintiffs have appealed from the denial of their request for preliminary injunctive relief. In ruling upon plaintiffs' motion for a preliminary injunction, the trial court found there was a reasonable probability of ultimate success, but that the other requirements for preliminary injunctive relief were not met. Our resolution of the issue raised on Adams County's cross-appeal now disposes of the trial court's finding that plaintiffs

had a reasonable probability of ultimate success.

Accordingly, the denial of plaintiffs' request for preliminary injunction is affirmed. The judgment declaring that the specific ownership tax revenue may not be allocated to the County Road and Bridge Fund is reversed, and the cause is remanded for entry of a judgment consistent with this opinion.

JONES and NEY, JJ., concur.