## No. 17,449.

### Cooper Motors, Inc. *v.* Board of County Commissioners of Jackson County et al.
(279 P. [2d] 685)

Decided January 31, 1955.

Mr. ALDEN T. HILL, Mr. RALPH H. COYTE, for plaintiff in error.

Mr. GEORGE J. BAILEY, for defendants in error.

Mr. J. FRED SCHNEIDER, Mr. JOHN C. BANKS, Mr. CHARLES H. HAINES, Mr. WESTEL B. WALLACE, amici curiae.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

We will herein refer to the parties as they appeared in

the trial court, where plaintiff in error was plaintiff and defendants in error were defendants.

The action was instituted by plaintiff to compel the correction of an alleged erroneous inventory valuation for 1953 placed on automobiles constituting the stock of merchandise being offered for sale by plaintiff corporation, a dealer in new and used cars.

Defendant Hampton, as county assessor for Jackson county, included within the assessment, to which plaintiff objected, motor vehicles upon which the Colorado specific ownership tax had been paid, and the county commissioners refused to eliminate such automobiles from the assessment upon said stock of merchandise. All administrative remedies provided by statute were exhausted by plaintiff, and the complaint in the trial court was on appeal from the action of the defendant Board in sustaining the assessment.

The case was submitted to the trial court on an agreed statement of facts, and a transcript of the proceedings before the County Commissioners sitting as a Board of Equalization. Formal findings and judgment were entered, which included the following:

"Findings of Fact

"1. That the Court has jurisdiction of the parties and issues involved, and that plaintiff has complied with all the statutory requirements requisite to appeal to this Court;

"2. That the facts stated in the Agreed Statement of Facts submitted in this cause are true;

"Conclusions of Law

"1. That under and solely by virtue of the rule of law as laid down by the Supreme Court of Colorado in the case of Denver vs. Hover Motors, 121 Colorado 439, 217 P. 2nd 863, plaintiff is not entitled to the relief sought by it in this action and the cars in plaintiff's stock of merchandise upon which the specific ownership tax had been paid, are nevertheless required to be included

in determining the assessed value of said cars for the tax of year here involved, 1953."

Judgment accordingly was entered in favor of defendants, and plaintiff, seeking reversal of the judgment, brings the cause here by writ of error.

Attorneys for plaintiff very frankly assert that they seek relief which can be granted only if the holding in *City and County of Denver v. Hover Motors, Inc.,* 121 Colo. 439, 217 P. (2d) 863, is overruled. Their position is stated in their summary of argument as follows: "The case of *Denver v. Hover Motors,* 121 Colo. 439, 217 P. (2d) 863, should be overruled. Facts and arguments bearing on the issue in that case were not presented to this Court; and some were made improperly in the petition for rehearing without factual background. The decision in the Hover case is premised on a presumed fact, which was not established there and is not correct. Even if correct, the constitutional provision requiring uniform taxation is not violated by making a special class out of motor vehicles."

Questions to be Determined.

First: *Tested by the points raised and the arguments made in this case, as well as those presented in Denver v. Hover Motors, supra, was that case decided correctly?*

This question is answered in the negative. The opinion in the *Denver v. Hover Motors* case was concurred in by four justices including the author of this opinion. Three justices dissented. For the reasons hereinafter set forth, we now determine that the decision in that case was erroneous and should be, and accordingly is, overruled. Statutory and constitutional provisions which are pertinent to the problems requiring solution are:

1. Section 54, chapter 142, '35 C.S.A., as amended: (C. R. S. '53 137-3-25) "In ascertaining the amount of moneys of any taxpayer invested in merchandise or in manufactures, the assessor shall ascertain the average amount during the fiscal year for which the tax is to be levied. The average amount of money invested in such

merchandise or manufactures during twelve months ending with the last day of December of such fiscal year shall be taken as a true measure of the value of such merchandise or manufactures for such fiscal year * * *."

2. Section 4, Article X of the Colorado Constitution, which exempts from taxation property specifically mentioned therein.

3. Amended section 6, Article X of the Colorado Constitution, S. L. '37, chapter 93, which is as follows:

"All laws exempting from taxation, property other than that hereinbefore mentioned, shall be void; provided however, that the general assembly shall enact laws classifying motor vehicles, trailers and semi-trailers and requiring the payment of a graduated annual specific ownership tax thereon, which said tax shall be in addition to, and payable to the proper county officer at the same time as state registration or license fees.

"Said graduated annual specific ownership tax shall be in lieu of all ad valorem taxes upon such property, and shall be distributed, apportioned, credited and paid over to the State and its political subdivisions as provided by law with reference to ad valorem taxes; provided further, *that such laws shall not exempt from ad valorem taxation motor vehicles, trailers and semi-trailers in process of manufacture, or held in storage, or which constitute the stock of manufactures, or distributors thereof or of dealers therein.*" (Emphasis supplied)

4. Sub-section 108 (a) (4) chapter 16, '35 C.S.A., as amended. This section implemented the constitutional provision above quoted and established procedures for the collection of the specific ownership tax. The section was amended by chapter 127, S. L. '47, which includes the following proviso: "* * * and, further provided, that the ad valorem tax shall not be assessed, levied or collected on or against motor vehicles, trailers or semi-trailers for the registration year or part thereof, that a specific ownership tax is paid, notwithstanding that such motor vehicles, trailers or semi-trailers are in process of

manufacture, are held in storage or constitute the stock of manufacturers or distributors thereof or dealers therein." In *Denver v. Hover Motors, supra,* we held this proviso to be unconstitutional. In our opinion in that case, as we now determine, we failed to observe basic rules of statutory construction which were applicable, and the author of the present opinion is at a loss to understand why he failed to recognize the error which now is manifest therein.

 In construing a constitutional provision, courts should ascertain and give effect to the intent of the framers thereof and of the people who adopted it, and, in so doing, technical rules of construction should not be applied so as to defeat the objectives sought to be accomplished by the provision under consideration. 16 C.J.S., p. 51; *Board of County Commissioners of the City and County of Denver v. Lunney,* 46 Colo. 403, 104 Pac. 945. If separate clauses in the same constitutional or statutory enactment can by one construction be harmonized so as to produce no inconsistencies, and, by a different construction, one phrase or clause thereof becomes antagonistic and out of harmony with another, courts should adopt that construction which creates no inconsistency.

 In determining whether an Act of the legislature is constitutional, courts must presume that it was passed with deliberation and with full knowledge of all existing law dealing with the same subject. A statute should be construed in a manner to harmonize it with existing constitutional provisions if it is reasonably possible to do so. *People v. Morgan,* 79 Colo. 504, 246 Pac. 1024; *Harrington v. Harrington,* 58 Colo. 154, 144 Pac. 20. In construing either constitutional or statutory language the first requisite is to inquire what objective was sought to be accomplished by it. "The intent of the statute is the law, and general words may be restrained to it and those of a narrower import may be expanded to

84

embrace it to effectuate that intent." *County Commissioners v. Lunney, supra.*

■ ■ It is clear that by the constitutional amendment authorizing the classification of motor vehicles and the imposition of a graduated annual specific ownership tax thereon, the people intended to, and did, direct that the chattel property specifically mentioned should be distinguished from all other personal property subject to payment of an ad valorem tax, and that once the specific ownership tax was paid no other property tax could be levied thereon. Our statement in *Denver v. Hover Motors, supra,* to the effect that if the motor vehicles, upon which the specific ownership tax had been paid, were excluded from the levy upon a dealer's stock of merchandise, an unjust "discrimination against dealers in radios, pianos, household appliances and other lines of comparable merchandise," would result, contrary to section 3, Article X of the Constitution of Colorado which requires that, "All taxes shall be uniform upon the same class of subjects, \* \* \*" is palpably erroneous. We overlooked the fact that by the amendment here questioned the people themselves created a class of "motor vehicles, etc." within the broad classification of personal property, and commanded that this new "class of subjects" be separately treated for purposes of taxation. This was done by constitutional amendment, and such an amendment cannot be "unconstitutional" when tested by the provision which it purports to change. The people can do anything by constitutional amendment unless prohibited by the terms of the Constitution of the United States.

The statement in the Article adopted by the people amended (section 6, Article X, supra) that laws passed by the legislature in furtherance of the amendment, "\* \* \* shall not exempt from ad valorem taxation motor vehicles, trailers and semi-trailers in process of manufacture, or held in storage, or which constitute the stock of manufacturers, or distributors thereof or of dealers

therein," must be construed in connection with the declaration that, "said graduated annual specific ownership tax *shall be in lieu of all* ad valorem taxes upon such property, * * *." (Emphasis supplied)

We are not impressed with the argument that a tax upon a stock of merchandise is not an "ad valorem" tax but a tax upon the average amount of money invested in the merchandise. This is an attempt to make a distinction where no difference in fact exists. A rose by any other name would still have the odor of a rose. The tax on merchandise, whether termed one based on the money invested therein or upon the thing itself after the investment has been made, still will possess the strong odor of an ad valorem tax, and no magic perfume embottled in a name can change it.

It now is perfectly clear that the people intended to provide that motor vehicles on which specific ownership taxes were paid should not be assessed for ad valorem taxes even though they become part of a dealer's stock. The owner of vehicles "in process of manufacture," and those "held in storage," and new unused vehicles which "constitute the stock of manufacturers, or distributors thereof or of dealers therein," never would be called upon to pay the specific ownership tax. Unquestionably it was only such vehicles that the people directed should always be subject to the ad valorem tax, and this for the reason that no specific ownership tax was to be collectible unless and until a license to operate the vehicle was obtained.

Even without the legislative Act of 1947, which was a proper interpretation of the constitutional provision itself, the dealer should not be subjected to a tax for a given year upon the value of merchandise consisting of vehicles on which a specific ownership tax had been paid for that year. If, however, such vehicle is carried over in stock for a year for which no specific ownership tax is paid, then such vehicle is subject to an ad valorem tax for that year. The Act of the legislature

was constitutional and this Court erred in holding otherwise in its earlier opinion.

Second: *Notwithstanding the error in the decision of our Court in Denver v. Hover Motors, should we be governed by the rule of stare decisis?*

■ This question is answered in the negative. "The rule of stare decisis, although highly beneficial in its place, does not justify or demand the continuance of an erroneous conclusion when error is manifest, where injustice, chaos and confusion result, and where no vested property rights have arisen in reliance upon the erroneous decision. It is universally recognized that, notwithstanding the rule of stare decisis and the inclination to follow precedent, the courts of last resort have the power, and it sometimes is their duty, in serving the interests of justice, to depart from rules previously established by court decision. This especially is true where to adhere to the rule and blindly follow precedent would be more harmful to the public at large than to correct a manifest error and establish a sound principle." *Mountain States Telephone & Telegraph Co. v. City and County of Denver*, 125 Colo. 167, 243 P. (2d) 397. We think the foregoing quotation is fully applicable to the instant case, and we would be remiss in our duty if we failed to correct our previous error at the first opportunity.

Third: *What has been the effect, upon the questions hereinabove answered, of the legislation dealing with statutory revision and particularly that portion thereof which provides that, "All statutes and parts of statutes of a general nature not contained in Colorado Revised Statutes 1953 are hereby repealed?"* (S. L. '53, c. 63, § 5).

The answer to this question is that the conduct of assessors shall in the future be governed according to our construction of the constitutional provision hereinabove quoted, without reference to that portion of the statute which was held invalid in our opinion in *Denver v. Hover Motors, supra.* Because of the holding in that case

the provision contained within the legislative Act of 1947, excluding from the ad valorem tax vehicles which were in the stock of dealers and on which the specific ownership tax had been paid, was not included in the revised text appearing in C.R.S. '53, 13-5-8. Chapter 63, section 5, Session Laws of Colorado 1953, page 197, provides, inter alia: "All statutes and parts of statutes of a general nature not contained in Colorado Revised Statutes 1953 are hereby repealed * * *."

Thus the Act of the legislature, which we now hold to have been constitutional, stands repealed by reason of the fact that due to our former holding it was omitted from the 1953 Colorado Revised Statutes. However, for the reason that we hold, by this opinion, that the repealed statute was only declaratory of what the framers of the Constitution intended to accomplish, for all practical purposes the result is the same even though the statute can no longer be said to exist.

The judgment is reversed and the cause remanded with directions to enter judgment in favor of plaintiff.