Mary Rita URBISH; Earl F. Dodge; William L. Woodley; Eleanor J. Boyd; Diane M. Hochevar; The Rt. Rev. James O. Mote; The Rev. Philip A. Nevels; The Rev. Francis A. Quintana; The Rev. Mr. John Woolley; The Rev. Mr. Roscoe Reed; Charles H. Buell; Jean E. Frascona; Rosalind E. Frascona; James Lewis; Michael K. Moore; Mary L. Nevels; Judith A. Quintana; Gloria Risow; Jeanne M. Woolley; Kristine Woolley; and Richard P. Woolley, Plaintiffs–Appellants,

v.

Richard D. LAMM, Governor of the State of Colorado; George S. Goldstein, Executive Director of the Colorado Department of Social Services; The Board of Social Services; The Colorado Department of Social Services; and The State of Colorado, Defendants–Appellees.

No. 86SA411.

Supreme Court of Colorado, En Banc.

Sept. 12, 1988.

---

Paul F. Lewis, Charles J. Onofrio, Denver, for plaintiffs-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Vivianne Chaumont Oates, Asst. Atty. Gen., Susan L. Warren, Deputy Atty. Gen., Denver, for defendants-appellees.

LOHR, Justice.

This appeal presents questions concerning the constitutionality of sections 26–4–105.5 and 26–15–104.5, 11 C.R.S. (1987 Supp.), and Rule 8.733, 10 C.C.R. 2505–10 (1985), which permit public funds to be used to pay for abortions that are necessary to prevent the death of a pregnant woman when every reasonable effort has been made to preserve the lives of both the woman and the unborn child. A number of individuals brought an action in Denver District Court, seeking a declaration that the statutes and the rule violate Article V, Section 50, of the Colorado Constitution, which prohibits the use of public funds for abortions except in narrowly limited circumstances. The district court upheld the statutes and the rule against the constitutional challenge and also rejected the plaintiffs' arguments that there was no statu-

tory authority for the rule and that it was void for want of a sufficient fiscal impact statement. The plaintiffs appealed directly to this court because the constitutionality of a statute is in question. *See* § 13–4–102(1)(b), 6A C.R.S. (1987). We affirm in part and reverse in part.

I.

In 1984 the voters of the State of Colorado adopted Article V, Section 50, of the Colorado Constitution. This section is popularly known as Amendment 3 and prohibits the use of public funds to pay for induced abortions except in narrowly defined circumstances where necessary to prevent the death of the pregnant woman. In 1985 the General Assembly adopted section 26–4–105.5, 11 C.R.S. (1987 Supp.), implementing the provisions of Amendment 3 under the Colorado Medical Assistance Act, and section 26–15–104.5, 11 C.R.S. (1987 Supp.), serving that same function under the Reform Act for the Provision of Health Care for the Medically Indigent. The language relevant to this appeal is identical in each statute. The Colorado Department of Social Services then adopted Rule 8.733, 10 C.C.R. 2505–10 (1985) (Rule 8.733), pursuant to sections 26–4–105.5 and 26–15–104.5, further detailing the criteria and procedures with respect to the use of public funds to pay the medical costs associated with abortions. Rule 8.733 was adopted first as an emergency rule and was later made permanent in August of 1985.

In October 1985 the plaintiffs, a group of individuals who are Colorado citizens and taxpayers, brought the present action in Denver District Court against the Governor, the Executive Director of the Department of Social Services, the Board of Social Services, the Colorado Department of Social Services, and the State of Colorado. The complaint sought a declaration that sections 26–4–105.5 and 26–15–104.5 (the Statutes) violate Article V, Section 50 (Amendment 3), of the Colorado Constitution by purporting to permit public funding of abortions in circumstances not allowed by Amendment 3. The complaint also sought the district court's determination that Rule 8.733 violates Amendment 3 for that same reason. The complaint further alleged that Rule 8.733 was passed without statutory authority and without compliance with section 24–4–103(8)(d), 10 C.R.S. (1987 Supp.), a part of the State Administrative Procedure Act, because the fiscal impact statement required by that statute was inadequate. The plaintiffs also requested the district court to issue a permanent injunction preventing the Colorado Department of Social Services from enforcing Rule 8.733. On September 22, 1986, the district court issued a written order holding that section 26–4–105.5 [1] and Rule 8.733 were constitutional, that the Rule was adopted pursuant to adequate statutory authority, and that the fiscal impact statement complied with the State Administrative Procedure Act. The individual plaintiffs then brought this appeal.

We first consider in general the scope of the constitutional prohibition of the use of public funds to pay for abortions. We then address the appellants' constitutional challenges to Rule 8.733 and their contentions that Rule 8.733 was not validly adopted because of the absence of statutory authority and the insufficiency of the fiscal impact statement. Finally, we address the appellants' challenges to the statutes.

II.

Colo. Const. art. V, § 50 (Amendment 3), provides:

No public funds shall be used by the State of Colorado, its agencies or political subdivisions to pay or otherwise reimburse, either directly or indirectly, any person, agency or facility for the performance of any induced abortion, PROVIDED HOWEVER, that the General Assembly, by specific bill, may authorize and appropriate funds to be used for those medical services necessary to pre-

---

**1.** The trial court did not expressly rule on the constitutionality of section 26–15–104.5. The relevant language of that statute is identical to that of section 26–4–105.5 and therefore we deem the trial court's ruling on section 26–4–105.5 to be equally applicable to section 26–15–104.5.

vent the death of either a pregnant woman or her unborn child under circumstances where every reasonable effort is made to preserve the life of each.

■ In construing a constitutional amendment, we should ascertain and give effect to the intent of those who adopted it. *Cooper Motors v. Bd. of County Comm'rs of Jackson County*, 131 Colo. 78, 83, 279 P.2d 685, 688 (1955). Because Amendment 3 was adopted by popular vote, we must seek to determine what the people believed the amendment to mean when they accepted it as their fundamental law. *In re Senate Resolution No. 2 Concerning Constitutionality of House Bill No. 6*, 94 Colo. 101, 113, 31 P.2d 325, 330 (1934). To this end, words used in the Constitution are to be given the natural and popular meaning usually understood by the people who adopted them. *A–B Cattle Co. v. United States*, 589 P.2d 57, 61, 196 Colo. 539, 545 (1978); *Prior v. Noland*, 68 Colo. 263, 267, 188 P. 729 (1920). With these principles as our guide, we must ascertain the meaning of Amendment 3.

Amendment 3 prohibits the use of public funds to pay for induced abortions subject to a narrow exception. It is the scope of that exception that is the focus of the present case.[2] The exception, for purposes of definiteness and clarity, is broader in one respect than the prohibition to which it applies. Even though the prohibition relates only to the use of public funds for abortions, the exception makes it clear that public funds may be used for "those medical services necessary to prevent the death of either a pregnant woman or her unborn child." Since an abortion, by definition, results in the death of the unborn child, any medical services that prevent the death of the unborn child must necessarily consist of procedures other than abortion.

Some examples may serve to provide clarity. If a pregnant woman's life were endangered by the continuation of the pregnancy, the amendment would permit the public funding of an abortion to save

her life, provided that every reasonable effort had been made to preserve the unborn child's life. If the pregnant woman's life were not endangered, but the unborn child's life were endangered, the amendment would permit public funding for those medical services necessary to prevent the unborn child's death. However, the amendment would not authorize the public funding of an abortion in such an instance, for the abortion would not be necessary to prevent the death of the woman and, by definition, would cause the death of the unborn child. As a final illustration, where a pregnant woman's life would be endangered if she carried an unborn child to term but would not be endangered if she carried the child to the point at which the child would be capable of living outside of the mother's womb (the point of "viability") and could be delivered by a medical procedure such as caesarean section, the amendment would not allow the public funding of an abortion.

Taken as a whole, Amendment 3 expresses the intention that no induced abortion shall be paid for by public funds unless necessary to prevent the death of the pregnant woman and unless every reasonable effort also has been made to preserve the life of the unborn child. It also makes clear, however, that medical services other than abortions may be publicly funded when necessary to prevent the death of either the pregnant woman or the unborn child under circumstances where every reasonable effort is made to preserve the life of each. It is against this understanding of the purpose and meaning of Amendment 3 that the appellants' constitutional challenges to the Statutes and Rule 8.733 must be evaluated.

### III.

We now address the appellants' various challenges to Rule 8.33. The appellants first challenge the constitutionality of Rule 8.733 and then contest the validity of the rule on the basis of lack of statutory authorization and insufficiency of the fiscal im-

---

**2.** Amendment 3 does not purport to limit the right of a pregnant woman to obtain an abortion. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (the seminal case on the right to abortion and the scope of that right). Amendment 3 is concerned only with the circumstances under which public funds may be used to pay for abortions.

pact statement. We address the appellants' arguments in that order.[3]

■ The appellants first assert that Rule 8.733 violates Amendment 3 by authorizing the public funding of abortions in circumstances in which Amendment 3 prohibits such funding. In evaluating this argument we are guided by the principle that administrative regulations are presumed valid and will be set aside only when the challenging party establishes their invalidity beyond a reasonable doubt. *Pigg v. State Dept. of Highways*, 746 P.2d 961, 967 (Colo. 1987); *Augustin v. Barnes*, 626 P.2d 625, 627–28 (Colo.1981); *Moore v. Dist. Court*, 184 Colo. 63, 67, 518 P.2d 948, 951 (1974).

Rule 8.733 provides:

Abortion services shall not be a benefit of the Colorado Medical Assistance Program except when the life of the pregnant woman or her unborn child is endangered as determined by the attending physician, and that [sic] every reasonable effort has been made to preserve respective lives. The procedure must be performed by a licensed physician in a licensed health care facility. However, such services may be performed in other than a licensed health care facility if, in the medical judgment of the attending physician, the life of the pregnant woman or her unborn child is substantially threatened and a transfer to a licensed health care facility would further endanger the life of the pregnant woman or the unborn child. Such medical services may be performed in other than a licensed health care facility if the medical services are necessitated by a life-endangering circumstance and if there is no licensed health care facility within a thirty-mile radius of the place where such medical services are performed. **A**

Any claim for payment must be accompanied by a case summary which includes the following information:
1. Name, address, and age of the pregnant woman;
2. Gestational age of the unborn child;
3. Description of the medical condition which necessitated the performance of the abortion;
4. Services performed;
5. Facility in which the abortion was performed; and
6. Date of service. **B**

If the abortion is performed as a result of the presence of a lethal medical condition which would result in the pending death of the unborn child during the term of pregnancy or at birth, the documentation must also be accompanied by a statement from another physician who is not the attending physician certifying the necessity of the abortion as a result of the unborn child's conditions. **C**

If there is a psychiatric condition which represents a serious and substantial threat to the pregnant woman's life if the pregnancy continues to term, then a psychiatric evaluation performed by a licensed physician specializing in psychiatry must accompany the claim for reimbursement for the abortion. **D**

For the purposes of this section, life-endangering circumstance shall mean:
1. The presence of a medical condition, other than a psychiatric condition, as determined by the attending physician, which represents a serious and substantial threat to the life of the pregnant woman if the pregnancy continues to term;
2. The presence of a lethal medical condition in the unborn child, as determined by the attending physician and one other physician, which would result in the impending death of the unborn child during the term of pregnancy or at birth; or
3. The presence of a psychiatric condition which represents a serious and substantial threat to the life of the pregnant woman if the pregnancy **E**

---

**3.** Ordinarily, we would first consider challenges to the Statutes and the rule that do not involve questions of constitutionality and only if those challenges proved unavailing would we wrestle with the constitutional questions. The appellants have not organized their arguments in that manner, however, and we elect to adopt the organization reflected in this opinion in order to address those arguments most directly.

continues to term. In such case, unless the pregnant woman has been receiving prolonged psychiatric care, the attending licensed physician shall obtain consultation from a licensed physician specializing in psychiatry confirming the presence of such a psychiatric condition. The attending physician shall report the findings of such consultation to the state department.

Abortions performed on or after June 4, 1985, which meet the above criteria, shall be a benefit of the Medicaid program.   ⟧ F

For the purpose of this section, treatment for the following conditions are not considered to be abortions:

1. Ectopic pregnancies (Pregnancy occurring in other than a normal position or place).
2. Miscarriage (spontaneous abortion).

These procedures will be documented in the same manner as any other medical procedure which is not covered by the abortion regulations.   ⟧ G

---

For purposes of their argument, the appellants have divided the rule into separate paragraphs, each paragraph enclosed in brackets and assigned a letter designation. We have replicated the designations for convenient reference.

### A.

■ Rule 8.733 provides that public funds can be used for "abortion services" in three enumerated "life-endangering circumstances" which are recited in paragraph E of the rule. Paragraph E1 provides that one life-endangering circumstance is "[t]he presence of a medical condition, other than a psychiatric condition, as determined by the attending physician, which represents a serious and substantial threat to the life of the pregnant woman if the pregnancy continues to *term....*" (Emphasis added.) According to the affidavit of McArthur Hill, M.D., filed in support of the appellants' brief in the district court, "[t]he word 'term,' as used in the medical community, means the normal and usual gestational period, approximately 37 weeks." *See also Stedman's Medical Dictionary* (24th ed. 1982). The appellants argue that pursuant to paragraph E1, Rule 8.733 allows public funds to be used for the abortion of a child who is viable but has not yet reached term, even though the child's life could be preserved by delivery by caesarian section or other means without endangering the life of the mother. We disagree. Paragraph E1 must be read in conjunction with the language of paragraph A, which requires that before public funds

may be used for an abortion "every reasonable effort" must have been made to preserve the lives of both the mother and her unborn child. Therefore, when the pregnant woman's life is endangered, public funds may be used for an abortion of a viable unborn child before term only in circumstances where every reasonable effort has been made to preserve the lives of both the mother and the unborn child. This provision of the rule accordingly comports with Amendment 3.

■ Paragraph E2 of the rule provides that a life-endangering circumstance is "[t]he presence of a lethal medical condition in the unborn child, as determined by the attending physician and one other physician, which would result in the impending death of the unborn child during the term of pregnancy or at birth...." When paragraphs A and E2 are read together, it appears that the intent of the drafters was to authorize payment for "abortion services" when the "life endangering circumstances" described in paragraph E2 exist. The appellants argue that paragraph E2 therefore "provide[s] for expediting the death of unborn children regardless of whether that expedition saves the mother's life."[4] We agree that paragraph E2 permits the public funding of abortions in circumstances not contemplated by Amendment 3. As discussed above, Amendment 3 permits the public funding of an abortion only when a pregnant woman's life is endangered and every reasonable effort is

---

**4.** The quoted arguments of the appellants as set forth in this opinion appear in their briefs filed in this court.

made to preserve the life of both the mother and the unborn child. Paragraph E2 allows the public funding of abortions of unborn children who will die of natural causes at or before birth even if the mother's life is not threatened by carrying the unborn child longer.[5] Paragraph E2 thus unconstitutionally allows the public funding of abortions in situations for which Amendment 3 permits no such funding.[6]

### B.

■ The appellants also assert that paragraph G1 of Rule 8.733 is inconsistent with Amendment 3. Paragraph G1 provides that "treatment for" ectopic pregnancies (pregnancies occurring when a fertilized ovum implants in a part of the mother's body other than the uterus) is not considered an abortion. The appellants argue that terminations of ectopic pregnancies are abortions and that Rule 8.733 permits the expenditure of public funds for an abortion of an unborn child who is the product of an ectopic pregnancy even though the fact of the ectopic placement of the child may not be discovered until after the child is viable. The appellants argue that Amendment 3 "would not permit the child to be aborted with public funds, but rather would require that the child be removed in a way that does not destroy the child's life." The appellants' argument is based upon the critical assumption that terminations of ectopic pregnancies are abortions within the meaning of Amendment 3. In analyzing the correctness of this assumption, we begin with the propositions that the interpretation of statutes by agencies charged with their enforcement is entitled to deference by the courts, *Colorado Civil Rights Comm'n v. Travelers Ins. Co.*, 759 P.2d 1358, 1366 (Colo.1988); *Hewlett–Packard Co. v. State Dept. of Reve-*

*nue*, 749 P.2d 400, 406 (Colo.1988); *Pigg v. State Dept. of Highways*, 746 P.2d 961, 967 (Colo.1987), and that in order to prevail the appellants must meet the burden of establishing the unconstitutionality of the regulation beyond a reasonable doubt, *Pigg v. State Dept. of Highways*, 746 P.2d at 967; *Augustin v. Barnes*, 626 P.2d at 627–28; *Moore v. Dist. Court*, 184 Colo. at 67, 518 P.2d at 951.

■ The only evidence in the record regarding ectopic pregnancies appears in the affidavit of McArthur Hill, M.D., filed in support of the appellants' brief in the district court. In the affidavit Dr. Hill states in relevant part:

6. 'Ectopic pregnancy' refers to a condition in which the fertilized ovum implants in a part of the mother's body other than the uterus. Ectopic pregnancies occur in the United States in less than 1% of all pregnancies.

7. Within the medical community, upon the detection of an ectopic pregnancy, an immediate termination of pregnancy is reasonably required because of the threat posed to the life and health of the mother. However, termination of a post-viability ectopic pregnancy, except in extremely rare circumstances, does not have to be accomplished by abortion. Rather, such termination can reasonably be accomplished by a procedure which does not in and of itself kill the unborn child.

Dr. Hill's affidavit states that if the ectopic pregnancy is identified as such prior to the viability of the unborn child, an immediate termination of the pregnancy should be effected because of the threat posed to the life and health of the mother. This indicates that an ectopic pregnancy inherently involves life-endangering risks to the moth-

---

**5.** The appellants do not address the issue of whether the "abortion" of an unborn child who is no longer living is an "abortion" within the meaning of Amendment 3 so as to deny public funding for such a medical procedure. We therefore do not consider this question.

**6.** The appellants have structured their argument principally to challenge the constitutional sufficiency of Rule 8.733, and we have elected to address the constitutional issue. As noted in

part IV.A. of this opinion, however, the Statutes do not authorize public funding of abortions in circumstances described in paragraph E2 of Rule 8.733 and the Rule in this respect is also invalid as exceeding the authority of the Statutes that it purports to implement. *See Pigg v. State Dept. of Highways*, 746 P.2d 961, 967 (Colo.1987); *Travelers Indem. Co. v. Barnes*, 191 Colo. 278, 282, 552 P.2d 300, 303 (1976).

er and is therefore a condition quite different from a normal pregnancy. Dr. Hill's affidavit is ambiguous as to whether an unborn child, at any stage of development, who is the product of an ectopic pregnancy can survive for long outside the body of the mother. The description of the nature and implications of an ectopic pregnancy and its termination as set forth in the doctor's affidavit, while sketchy, nevertheless sufficiently indicates that such a pregnancy is a condition quite unlike a normal pregnancy. Moreover, this limited proof tends to support rather than call into question the interpretation of Amendment 3 and the implementing statutes by the Colorado Department of Social Services that the termination of an ectopic pregnancy is not an abortion within the meaning of Amendment 3. The appellants have failed to meet their burden of proof that Paragraph G1 of Rule 8.733 violates Amendment 3.

### C.

■ The appellants next argue that Rule 8.733 provides no meaningful mechanism by which the requirements of Amendment 3 can be monitored. The appellants make a number of separate arguments in this regard.

Paragraph B of the rule requires doctors to submit certain information with any claim for payment for services performed under the guidelines of the rule. The information includes a "[d]escription of the medical condition which necessitated the performance of the abortion," and information concerning the "[s]ervices performed." The appellants argue that the enforcement of the amendment's requirements is entirely the responsibility of physicians who have a financial interest in describing the medical conditions and services performed in a manner that will qualify for payment under the rule. The appellants do not articulate the way in which such a deficiency would render the rule unconstitutional. It is not necessary, however, that we resolve the relevant constitutional claim, because we find the appellants' factual and legal premises for that claim to be baseless.

First, the appellants' argument assumes that physicians will either supply a false diagnosis of a patient's condition or falsify the medical records in order to receive public money for the medical services. The appellants provide no evidence or other basis to support their assumptions that such grave professional misconduct would be commonplace. Second, under Rule 8.733 physicians are not left with the ultimate responsibility for ensuring compliance with the requirements of the rule. It is implicit in paragraphs A and B that treating physicians must provide the requisite information to persons administering the Colorado Medical Assistance Program for independent evaluation of whether public funds can be used for the services performed. The officials responsible for payment of funds for the services have the responsibility to assure compliance with the requirements of the rule.

Next, the appellants argue that Rule 8.733 contains no requirement that the provider of medical services identify what efforts, if any, were made to preserve the life of either the mother or the unborn child. In our opinion, the rule must be read to require the physician to identify such efforts. As noted previously, the rule requires the physician to submit certain information with any claim for payment. One such piece of information is a description of "services performed." If public funds are to be used to pay for the services, the physician must provide information establishing that every reasonable effort was made to save the life of the mother and the unborn child. These efforts would be documented in the "services performed" portion of the physician's case summary. Thus, while the rule contains no express requirement that the medical provider detail the reasonable lifesaving efforts, the rule's reporting requirements guarantee that such information will be supplied as a condition precedent to approval of payment with public funds.

Paragraph E3 of Rule 8.733 describes as a life-endangering circumstance "[t]he presence of a psychiatric condition which represents a serious and substantial threat to the life of the pregnant woman if the pregnancy continues to term." Paragraph

E3 requires the physician to consult with a psychiatrist to confirm the presence of the psychiatric condition, unless the woman has been receiving prolonged psychiatric care, and to report the findings of the consultation to the Department of Social Services. The appellants argue that "paragraph E3 commits entirely to the discretion of the abortionist and a psychiatrist a question which is answerable in only the most inexact way by the most inexact of sciences." The appellants argue that such discretion is in direct contrast to the guidelines governing the emergency commitment of the mentally ill who appear to present an imminent danger to themselves. *See* § 27–10–105, 11 C.R.S. (1982 & 1987 Supp.).

First, the psychiatric considerations surrounding the commitment of the mentally ill differ entirely from the considerations a psychiatrist must take into account when consulted regarding a potential abortion. Thus, whether the rule contains requirements similar to those in section 27–10–105 is not necessarily relevant. Second, the rule requires that in order to qualify for public funding, a physician's decision to perform an abortion based on psychiatric considerations must be supported by a psychiatrist's opinion or a record of prolonged psychiatric care and finally scrutinized by the Department of Social Services. We conclude that the rule requires sufficient professional evaluation on a number of levels prior to abortion for psychiatric reasons to satisfy the requirements of Amendment 3 concerning public funding of abortions.

Paragraph C of the rule provides:

If the abortion is performed as the result of the presence of a lethal medical condition which would result in the pending death of the unborn child during the term of pregnancy or at birth, the documentation must also be accompanied by a statement from another physician who is not the attending physician certifying the necessity of the abortion as a result of the unborn child's conditions.

The appellants assert that paragraph C provides no guidelines as to what constitutes the "necessity" for the abortion. The appellants ask rhetorically whether the termination of the unborn life is the "necessity" contemplated by the rule. If so, the appellants argue, then the rule violates Amendment 3, the objective of which is the preservation of life. We agree that public funding of abortions performed when the mother's life is not in danger is impermissible under Amendment 3. Paragraph C details the documentation required when the life-endangering circumstance is the lethal medical condition of the unborn child as described by paragraph E2. As we discussed above, paragraph E2 fails to comport with Amendment 3 in that it allows the public funding of an abortion of an unborn child when the mother's life is not in danger. The "necessity" paragraph C speaks of is precisely the necessity of such a procedure. Invalidation of paragraph E2, therefore, eliminates the relevance of the documentation described in paragraph C.

### D.

■ The appellants next argue that the Department of Social Services had no statutory authority to pass Rule 8.733. Amendment 3 provides that public funds to be used for medical services are to be authorized and appropriated by the legislature by a "specific bill." The appellants argue that the legislature did not specifically authorize and appropriate funds for the implementation of sections 26–4–105.5 and 26–15–104.5 and that therefore "Rule 8.733 has no funding and cannot constitutionally be used as a predicate for reimbursement of abortionists." Notwithstanding the appellants' argument to the contrary, however, H.B. 1371, by which sections 26–4–105.5 and 26–15–104.5 were enacted, is the bill by which the legislature authorized the use of funds for permissible medical services. *See* Ch. 230, secs. 1, 2, §§ 26–4–105.5 and 26–15–104.5, 1985 Colo.Sess.Laws 948. Subsection (2) of the Statutes provides that "[i]f every reasonable effort has been made to preserve the lives of a pregnant woman and her unborn child, then public funds may be used *pursuant to this section* to pay or reimburse for necessary medical services, not otherwise provided by law." (Emphasis added.) Subsection (2) therefore provides the specific statutory authority

for the expenditure of public funds under Rule 8.733, and appropriations may be made by the legislature in furtherance of this authority.

### E.

The appellants finally argue that the Department of Social Services enacted Rule 8.733 without complying with section 24–4–103(8)(d), 24 C.R.S. (1987 Supp.), of the State Administrative Procedure Act. Section 24–4–103(8)(d) provides[7] in pertinent part:

> Effective July 1, 1977, all rules submitted pursuant to this paragraph (d) that have a fiscal impact shall be accompanied by a fiscal statement. No rule that has a fiscal impact shall be deemed to be submitted unless it is accompanied by such a fiscal statement. The statement shall include an identification of the types of persons or groups who will bear the costs of the rule and the types of persons or groups who will benefit, directly or indirectly, from the rule.

In *Citizens For Free Enterprise v. Department of Revenue*, 649 P.2d 1054 (Colo. 1982), we considered the function of a court in reviewing the sufficiency of fiscal impact statements. We stated:

> [T]he role of the court in reviewing the sufficiency of those statements is limited. Where a statement has been submitted that the regulation will have no fiscal impact or setting forth what that impact will be, and the fiscal impact statement is not found objectionable by the general assembly, courts should presume the adequacy of the statement. Only where the statement of fiscal impact is clearly inadequate may the court intervene.

*Id.* at 1060. It is with this limited judicial role in mind that we approach our task of reviewing the sufficiency of the fiscal impact statement at issue here.

The appellants argue that the fiscal impact statement prepared in support of Rule 8.733 is deficient in a number of respects. First, they assert that the statement fails to include unborn children among the persons who would benefit or be injured by the rule. An examination of section 24–4–103(8)(d) reveals that the fiscal impact statement is not required to contain a description of the types of persons the rule will injure. The statute only requires a description of those types of persons or groups who will bear the costs of the rule. When read in the context of the fiscal impact statement statute, the word "costs" must mean *fiscal* costs. The statute nowhere contemplates identification of the types of persons or groups who will incur other kinds of injuries as a result of a rule.

Second, the appellants argue that the fiscal impact statement is deficient because it fails to isolate the fiscal impact of only those abortions that qualify for public funding under Amendment 3. Instead, the appellants argue, the statement describes the fiscal effect of abortions needed to save pregnant women from complicated deliveries. This argument is based upon a serious misreading of the fiscal impact statement. The statement reflects that under the law in effect prior to Rule 8.733 no abortions could be performed using Medicaid Funds. It then estimates that "60 annual life-endangering abortions" will be performed under Rule 8.733. The abortions referred to as "life-endangering" are clearly those required to save the life of the pregnant woman under circumstances qualifying for funding under Amendment 3. The fiscal impact statement then compares the costs of these abortions to the costs of the complicated deliveries and associated medical care that would be required if the abortions were not performed. This results in an estimate of the fiscal impact of the public funding provisions of Rule 8.733.[8] Con-

---

7. Section 24–4–103(8)(d) has been amended to delete the requirement for a fiscal impact statement effective May 17, 1988. Ch. 163, sec. 1, § 24–4–103(8)(d), 1988 Colo.Sess.Laws 884, 885–86.

8. The fiscal impact statement predicted a net financial benefit to the public because abortions are less costly financially than complicated deliveries and attendant physician and hospital care. The fiscal impact statement contained no estimate of the number of abortions that would

trary to the appellants' arguments, this method of estimation of the fiscal impact of Rule 8.733 directly relates to those abortions that will qualify for public funding. We conclude that the appellants' challenges to the sufficiency of the fiscal impact statement are not meritorious.

### F.

In summary, we hold that Amendment 3 does not authorize the public funding of abortions in circumstances described in paragraph E2, as partially implemented by paragraph C of Rule 8.733. The remainder of the rule, however, comports with Amendment 3. We reject the appellants' contentions that there is no statutory authority for the rule and that the fiscal impact statement is fatally deficient.

■ We also conclude that paragraphs E2 and C are severable from the remainder of Rule 8.733 because the remaining provisions are autonomous and not so interrelated with the invalid provisions of the rule as to suggest that the drafters of the rule would not have adopted the remaining provisions in absence of the invalid paragraphs. *See Stiens v. Fire and Police Pension Ass'n,* 684 P.2d 180, 183 (Colo. 1984); *City of Lakewood v. Colfax Unlimited Ass'n, Inc.,* 634 P.2d 52, 70 (Colo.1981). *See also* §§ 26–4–105.5(7), 26–15–104.5(7) (severability clauses in Statutes). We therefore conclude that paragraphs E2 and C must be severed from Rule 8.733, but that the remainder of the rule shall remain intact and functional.

### IV.

We now consider the appellants' arguments that the Statutes are constitutionally deficient.

### A.

■ The appellants challenge the constitutionality of those provisions of sections 26–4–105.5 and 26–15–104.5 that have counterparts in Rule 8.733 on the same grounds on which they challenge the constitutionali-

ty of the corresponding provisions of the rule.[9] A statute enjoys a presumption of constitutionality and one who challenges the statute's constitutionality bears the burden of proving its unconstitutionality beyond a reasonable doubt. *Parrish v. Lamm,* 758 P.2d 1356, 1363–64 (Colo.1988); *Anderson v. Colorado State Dept. of Personnel,* 756 P.2d 969, 975 (Colo.1988); *Exotic Coins, Inc. v. Beacom,* 699 P.2d 930, 935 (Colo.1985). The appellants assert that "Rule 8.733 simply parrots most material elements of the Abortion Statutes." We generally accept the appellants' assertion and hold that, because the challenged provisions of the Statutes are essentially the same as those provisions of the rule we hold constitutional today, the Statutes as well survive the appellants' constitutional attacks.

■ The appellants' assertion, however, is not entirely accurate. A close reading of the Statutes reveals that the statutory counterparts of paragraphs A and E2 of Rule 8.733 differ from the rule in one significant respect. The rule provides in paragraph A that *abortion services* may be publicly funded when the life of the pregnant woman or her unborn child is endangered and every effort has been made to preserve their respective lives. Paragraph E2 then defines a life-endangering circumstance to include "a lethal medical condition in the unborn child ... which would result in the impending death of the unborn child during the term of the pregnancy or at birth." The rule therefore contemplates the funding of an abortion of a living unborn child afflicted with a lethal medical condition even though such a procedure is not necessary to save the life of the mother. The Statutes on the other hand do not base their funding authorization on *abortion services* but permit only the payment for *necessary medical services* which are defined as "medical procedures deemed necessary to prevent the death of a pregnant woman or her unborn child due to life-endangering circumstances." *See*

---

9. The Statutes, however, contain no counterparts of paragraphs B, C or G of Rule 8.733.

bc performed as a result of psychiatric evaluations but predicted that they would be minimal.

768

§§ 26–4–105.5(2), (6)(c), 26–15–104.5(2), (6)(c), 11 C.R.S. (1987 Supp.). Therefore, under the Statutes reimbursement may not be provided for an abortion that is not necessary to prevent the death of the pregnant woman. The statutory authorization for payment in this regard, therefore, does not suffer from the same infirmity as paragraph E2 of Rule 8.733 and is fully consistent with the provisions of Amendment 3.

### B.

In their reply brief, the appellants argue that the "reasonable efforts" clause in the Statutes differs from the same clause in Amendment 3 so as to render the Statutes unconstitutional. The amendment provides that public funds may be used for necessary medical services "where every reasonable effort *is made* to preserve the life of the pregnant mother and unborn child." (Emphasis added.) Subsection (2) of the Statutes provides, on the other hand, that "[i]f every reasonable effort *has been made* to preserve the lives of a pregnant woman and her unborn child," then public funds may be used to reimburse for necessary medical services. (Emphasis added.)

The appellants argue that the Statutes provide that, first, every effort to preserve lives must be made, then, after reasonable efforts have been made, a publicly funded abortion may be performed. They argue that Amendment 3, on the other hand, "requires that a pregnancy termination be viewed in light of whether the termination itself *presently* uses reasonable efforts to preserve the life of the unborn child." (Emphasis in original.) We conclude that the meaning of the Statutes is not at variance with that of Amendment 3. The Statutes cannot reasonably be construed to permit cessation of reasonable efforts to save the lives of the mother and unborn child at any time before the completion of the medical services resulting in abortion. The Statutes and Amendment 3, although employing different language, all require that reasonable efforts be made to save the lives of both the mother and the unborn child at all times that such efforts may be availing.

### C.

The appellants finally argue that even if the Statutes are constitutional, they must be struck down because of their unconstitutional effect: the passage of Rule 8.733. We have determined that, except for paragraphs E2 and C, Rule 8.733 is constitutional. The unconstitutional provisions are severable. Moreover, the unconstitutional paragraphs of the rule find no counterpart in the Statutes. The Statutes therefore have no unconstitutional effect and the appellants' argument on this ground must fail.

The judgment of the district court is affirmed in part and reversed in part, and the case is remanded to that court for entry of judgment in accordance with this opinion.