GOCO purported to adopt a constitutional reapportionment of all net proceeds of the state's lottery in order to dedicate those proceeds to the state's wildlife, park, river, trail and open space heritage as well as the repayment of certain preexisting financial obligations of the state. Article XXVII, § 3(1) adopts a definition of net proceeds for every state supervised lottery game operated under the authority of article XVIII, § 2, of the Colorado Constitution. All such net proceeds are "set aside, allocated, allotted, and continuously appropriated" for the preservation, protection enhancement and management of the state's wildlife, park, river, trail and open space heritage.
The net lottery proceeds are allotted to the Conservation Trust Fund for distribution pursuant to the formula prescribed in article XXVII, § 4. GOCO provided for a transition period through the fourth quarter state fiscal year 1997-1998. During the transition period net lottery proceeds are to be distributed to the Conservation Trust Fund and the Division of Wildlife in amounts allocable thereto under statute as amended through January 1, 1992 and to the State Capital Construction Fund to pay certain debt service enumerated in GOCO. The remaining net proceeds, if any, are paid to the GOCO Trust Fund. The General Assembly has requested clarification of what amount of net lottery proceeds are available to the State Capital Construction Fund to pay debt service under article XXVII, § 3 of the Colorado Constitution.
Prior to answering and analyzing the specific questions posed by the General Assembly in its request of November 29, 1993, it is useful to review the standards for interpretation of the language of constitutional amendments and interpretation of the intent of the drafters.
In construing a constitutional amendment, a court would seek to ascertain and give effect to the intent of those who adopted it, Cooper Motors v. Board of County Commissioners ofJackson County, 131 Colo. 78, 83, 279 P.2d 685 (1955), and therefor words used in the constitution are to be given the natural and popular meaning usually understood by the people who adopted them, A-B Cattle Company v. United States,196 Colo. 539, 545, 589 P.2d 57, 61 (1978). The General Assembly has authority to facilitate carrying out constitutional provisions but it may not make a limitation other than that by the constitution. Yenter v. Baker, 126 Colo. 232, 248 P.2d 311,316 (1952). A constitutional provision should be construed liberally in view of "the object to be accomplished and the mischief to be avoided . . . in such a manner as will prevent an evasion of its legitimate operation." Colorado Common Causev. Bledsoe, 810 P.2d 201, 206-207 (Colo. 1991).
QUESTIONS PRESENTED AND CONCLUSIONS
a. Can debt service payments due after November 30, 1998 under the terms of the original obligation be made payable from lottery proceeds through refunding of the obligation consistent with § 3(1)(a) of article XXVII of the state constitution? If so, to what extent?
 No. Debt service payments due after November 30, 1998 under the terms of the original obligation cannot be made from net lottery proceeds through the refunding of the obligation.
b. If the refunding of the underlying obligation was accomplished prior to the enactment of said § 3(1)(a), are the same limitations applicable? If not, what are the limitations?
 Yes. Debt service payments due after November 30, 1998 under the terms of the original obligation, even if refunded prior to the effective date of article XXVII, cannot be made from net lottery proceeds.
c. Would repayment of that portion of the "1992 Refunding Issue" which exceeds the original total amount of the obligations refunded thereunder violate the provisions of GOCO?
 Yes. Payment of refunded obligations in excess of the original permitted debt service would violate article XXVII, § 3(1)(a)(II).
 ANALYSIS
d. GOCO permits refunding and/or payment from net lottery proceeds of debt service "due from and including September 1, 1993, to and including November 30, 1998, on the obligations described in Subsection (1)(c) of this § 3, but only to the extent such debt service is due during such period according to the terms of the documents originating such obligations. . . ." Colo. Const. art. XXVII, § 3(1)(a)(II) ("permitted debt service"). The language of article XXVII appears clear and unambiguous. Net lottery proceeds may not be used to pay either the debt service due after November 30, 1998 pursuant to the terms of the original obligation or any refunding of debt originally due after November 30, 1998 pursuant to the terms of the original obligation. Net lottery proceeds available to the State Capital Construction Fund ($163,323,746.14)[1] are only
available to pay the permitted debt service. If the permitted debt service can be paid off for a lesser amount by refinancing, then any funds remaining from the $163,323,746.14 are not available to pay other capital construction obligations, including those refinanced by the 1992 refinancing. The $163,323,746.14 is legally a "not to exceed" amount within the meaning of the GOCO Amendment and no portion of it is available to be used for other obligations once the permitted debt service has been satisfied. The money saved would be available to the GOCO Board to fund other projects.[2]
Section 33-60-103(1)(c)(I)(D), C.R.S. (1993), requires payment of refunded state capital construction obligations on the 1989 Master Lease Purchase Agreement in the original amount of $66,894,861.85 for the portion of the certificates which matureon and after November 1, 1999. Additionally, the State of Colorado refunded certain other obligations listed in GOCO § 3(1)(c)(I) in October, 1992. This refunding increased the debt service due through November 30, 1998, from $163,323,746.14 to $169,921,223.14 and included the transfer of some principal amounts due after November 30, 1998 under the documents originating such obligations into debt service due prior to November 30, 1998.
e. Pursuant to article XXVII § 3(1)(a)(II), net lottery proceeds are allocated to the State Capital Construction Fund only to pay the original or refunded debt obligation for those obligations specifically described in § 3(1)(c) and originally due during the period of September 1, 1993 through November 30, 1998. Refunding of a post November 30, 1998 debt obligation prior to the effective date of GOCO does not change this result. GOCO makes no allowance for payment from net lottery proceeds of the refunded obligation any more than it does for the original underlying obligation. ". . . [T]o refund debts is to change the form and, generally, the time and manner of payment, of a debt which has already been funded . . . [T]he doctrine that funding or refunding of an existing indebtedness does not increase the indebtedness of the corporation is founded on the condition that there is merely a change in form of the debt, and the old evidences of the debt are merely to be exchanged for the new." Jones, The Law of Bonds and Bond Securities, 4th ed., Vol. I, § 101, pg. 98-100 (1935). Seealso, 56 Am.Jur.2d § 656, pg. 704; and Manley v.Board of Commissioners of Pueblo County, 46 Colo. 491,104 P. 1045, 1046 (1909), "A `refunding' is merely funding again or anew."
The 1992 refunding did not alter the amount of the permitted debt service payable under GOCO. Article XXVII § 3(c) prevents the payment of debt service on obligations originated on or after January 1, 1992.
f. Article XXVII § 3(1)(a)(II) places a limit on the amount of net lottery proceeds which may be used to pay a refunded debt listed in § 3(1)(c)(I). Payment of such refunded debt is allowable "to the extent the debt service on such refunding obligation does not exceed the total amount of debt service payable on the applicable refunded obligation from and including September 1, 1993, or from the date of such refunding, if later, to and including November 30, 1998, according to the terms of the documents originating the applicable refunded obligation. . . ." Colo. Const. art. XXVII, § 3(1)(a)(II). The General Assembly has caused certain of the debt obligations payable under article XXVII to be refunded in the "1992 Refunding Issue". The permitted debt service payable from net lottery proceeds is capped at $163,323,746.14. The "1992 Refunding Issue" may neither increase this cap nor expand the capital construction obligations payable from net lottery proceeds beyond the permitted debt service set forth in article XXVII, § 3(1)(c).
SUMMARY
Article XXVII, § 3(1)(a)(II) limits payments from net lottery proceeds on the obligations of the State Capital Construction Fund to the amount of debt service due on the bonds listed in § 3(c)(I) from September 30, 1993, to November 30, 1998, according to the terms of the documents originating those obligations ($163,323,746.14). The General Assembly cannot pay any other obligations or post-November 30, 1998, debt service on the obligations listed in § 3(c)(I) from net lottery proceeds. The "1992 Refinancing" cannot modify the permitted debt service. It did not, and cannot, expand the capital construction obligations which may be paid from net lottery proceeds. It simply reduced the amount of net lottery proceeds required to pay the permitted debt service. The General Assembly cannot take these "savings" and apply them to other debt service. These savings become revenue for the Great Outdoors Colorado Trust Fund.
 GALE A. NORTON Attorney General
 MERRILL SHIELDS Deputy Attorney General
 STEPHEN G. SMITH Assistant Attorney General
CONSTITUTIONAL AMENDMENTS STATE GOVERNMENT REVENUE BONDS
Colo. Const. art. XXVII, The Great Outdoors Colorado Program Amendment § 33-60-103(1)(c)(I)(D), C.R.S. (1993)
GENERAL ASSEMBLY
Article XXVII, § 3(1)(a)(II), Colo. Const., limits payments from net lottery proceeds on the obligations of the State Capital Construction Fund to payment of debt service due on the bonds listed in § 3(c)(I) from 09/30/93 to 11/30/98 according to the terms of the documents originating these obligations.
[1] The $163,323,746.14 amount includes all debt service payments due between September 1, 1993 and November 30, 1998 as shown by the originating documents but does not include any associated costs which may properly be included within the calculation of permitted debt service.
[2] Article XXVII, § 3(1)(d), Colo. Const., provides that the State Board of the Great Outdoors Colorado Trust Fund may, in its sole discretion, authorize the payment of net lottery proceeds for additional amounts of interest above the amounts authorized by GOCO § 3(1)(a) for the refunding of any of the permitted debt service. This opinion does not address the process for, or the limits of, such a discretionary transfer by the Board.